[No. 27848. *En Banc.* June 27, 1940.]

THE STATE OF WASHINGTON, *Respondent,* v. MRS. NEIL
POPE, *Appellant.*[1]

[1]Reported in 103 P. (2d) 1089.

*Gleeson & Gleeson,* for appellant.

*Ralph E. Foley* and *Harvey Erickson,* for respondent.

STEINERT, J.—Defendant was tried and found guilty by a jury upon a charge of resisting a public officer engaged in the performance of a legal duty. From a judgment of conviction, defendant has appealed.

The facts, as established by the jury's verdict, are as follows: Appellant purchased a range and a refrigerator, under a conditional sale contract, from a mercantile company in Spokane. Several monthly installments having become delinquent, the vendor threatened to repossess the merchandise by legal process unless at least a full monthly payment was made. Appellant was unable to make the payment and defiantly announced that she would not surrender the property. The vendor thereupon assigned the contract to its sales manager, who thereafter, as plaintiff, filed in the superior court a summons and complaint against appellant and her husband, seeking a return of the property or, in the alternative, a money judgment for its value. At about the same time, the plaintiff in that action made claim for immediate delivery of the property upon filing an affidavit and bond as required by Rem. Rev. Stat., §§ 707, 708, and 709 [P. C.

§§ 8421, 8422, 8423], relating to "claim and delivery (replevin)."

On receipt of copies of these papers in the sheriff's office, a deputy went to appellant's home, about three o'clock in the afternoon, for the purposes of making service thereof and of obtaining the property described in the conditional sale contract. Upon his arrival there, two men who had been sent by the vendor were waiting with a truck to assist in removing the range and the refrigerator.

The deputy rang the door bell, and appellant, in response, opened the door partially. The deputy introduced himself, explained his mission, and delivered to appellant two copies of the summons, complaint, affidavit, and bond, respectively, one of each for appellant and the others for her husband. The deputy also inquired of appellant whether she then had the range and the refrigerator in her possession, and on receiving an affirmative answer informed her that it was his "unpleasant duty under the bond and replevin to remove them."

Appellant thereupon started to close the door. The deputy, however, put his foot inside the entrance and thus held the door ajar. Then, by exerting the force of his weight, he pushed the door open and entered the room. Appellant immediately became very belligerent. After ordering the deputy to leave the house, she endeavored to push him out. Failing in that, she resorted to blows and other personal indignities, accompanied by the use of abusive language. The deputy endeavored to protect himself against her as best he could, but refrained from injuring her in any way. He insisted, however, on taking the articles mentioned, and proceeded to the kitchen, where he found the range and the refrigerator. The deputy thereupon

called the men who were waiting outside, and the three men then began to disconnect the appliances.

The work of disconnecting and removing the range and the refrigerator consumed about thirty or thirty-five minutes. Throughout the entire period, appellant continued her attacks and abusive language. The deputy finally warned her that, if she did not desist, he would have to place her under arrest. The warning, however, had no effect, and the deputy thereupon took her into custody and, after the work of removing the appliances had been completed, proceeded with her to the courthouse. He there swore out the complaint upon which she was subsequently tried and convicted.

Appellant contends that the officer did not have the right to enter her dwelling place over her protest, and that her resistance was therefore justified. The vital question to be determined, then, is whether or not the deputy sheriff had the right, against the protest and resistance of appellant, to enter the dwelling place for the purpose of repossessing the property covered by the conditional sale contract.

The precise question has never been presented to this court, and cases from other jurisdictions are of little aid, because in this state proceedings in replevin are governed by the claim and delivery statute.

As an approach to the question, however, we may advert to the rule of the common law that, in executing a civil writ or process, an officer may not break an outer door, or other outside protection, to a dwelling house, or forcibly enter a dwelling, even after request for, and refusal of, admittance. 2 Freeman, Executions (3d ed.), 1436 *et seq.*, § 256.

The common law rule is founded upon the ancient and well known principle that respects a man's home as his citadel, fortress, or asylum, not only for defense against injury and violence, but also for repose to his

family. The object of the law as expressed in the legal maxim is not to secure an immunity of goods against attachment on civil process, but, rather, to afford protection to the home and the family.

Upon the theory that a writ of replevin and similar writs are but civil processes, the common law rule is likewise applicable to writs of replevin, writs *de retorno habendo,* and orders for the sale of specific personal property. 3 Freeman, Executions (3d ed.), 2457, § 468; 23 R. C. L. 892, § 48; 54 C. J. 491, § 143. Interesting discussions of the rule and the cases will be found in annotations appearing in Ann. Cas. 1915C, 1142, and L. R. A. 1916D, 282.

While some of the text writers upon the subject seem to think that the common law rule has no application to writs of replevin (Shinn, Replevin, 324, § 368; Cobbey, Replevin (2d ed.), 340, 341, § 647; Wells, Replevin (2d ed.), 272, § 287), it appears that those writers relied principally upon early American cases in which the respective courts apparently confused writs for the seizure of specific chattels with writs for the recovery of specific real estate, which latter writs are protected by entirely different considerations. The great weight of authority under the common law is clearly to the effect that the rule is applicable to all civil writs or process, including writs of replevin.

■ However, as already suggested, we have in this state a statutory procedure relating to claim and immediate delivery of personal property, and hence the common law is not controlling.

■ Rem. Rev. Stat., § 707, provides:

"The plaintiff in an action to recover the possession of personal property may, at the time of issuing the summons, or at any time before answer, claim the immediate delivery of such property as herein provided."

Rem. Rev. Stat., § 708, prescribes the form of the affidavit to be made by the plaintiff when claiming such delivery. The affidavit must show, among other things, that the plaintiff is the owner of the property claimed, or is lawfully entitled to the possession thereof by virtue of a special property therein, and that the property is wrongfully detained by the defendant.

Rem. Rev. Stat., § 709, provides for the execution of a bond by the plaintiff, to be approved by the sheriff. Upon the receipt of the prescribed affidavit and bond, the sheriff is required forthwith to take the property described therein, if it be in the possession of the defendant, or his agent, and retain it in his custody.

Rem. Rev. Stat., § 714 [P. C. § 8428], provides:

"If the property, or any part thereof, be concealed in *the building* or inclosure, the sheriff shall publicly demand its delivery. If it be not delivered, he shall cause the building or inclosure to be broken open, and take the property into his possession, and if necessary, he may call to his aid the power of his county." (Italics ours.)

The phrase "the building," where italicized in this section, appears to be, in part, a misprint. It should read "a building." See Laws of 1854, p. 151, § 107; Code of 1881, § 149; 2 H. C., § 262.

It will be noted that this section makes no exception of the dwelling house, but refers generally to any building or inclosure.

Strange to say, there is a dearth of authority upon the question whether, under a statute similar to ours, a dwelling house may be broken and entered by a sheriff, or other officer, for the purpose of taking possession of personal property located therein. No case arising out of the statute of this state has been called to our attention. However, what little general authority we have been able to find upon the subject is to

the effect that, under such a statute, a sheriff or other proper officer has the right to break and by use of force enter a dwelling after demand upon the owner for the property, and refusal thereof by him.

In *State ex rel. McPherson v. Beckner,* 132 Ind. 371, 31 N. E. 950, 32 Am. St. 257, wherein the statute involved was almost identical with our own, the court expressly recognized that in actions for replevin a *sheriff* may cause a dwelling house to be broken open. The court held in that case, however, that a *constable,* who had made the entry, did not have such right under the statute, and that, as to him, the common law rule was in force.

In *State v. Whitaker,* 107 N. C. 802, 12 S. E. 456, it was likewise held that a constable could not, for the purpose of levying an attachment, forcibly enter a dwelling house. The court, however, made a clear distinction between attachment and the statutory claim and delivery, holding that, in the latter instance, the officer had such authority where the property was concealed. The North Carolina code of 1883, § 329, contains the identical language to be found in Rem. Rev. Stat., § 714.

In *Rentschler v. Fox,* 130 Mich. 498, 90 N. W. 275, an action in trespass was brought against a constable for breaking and entering plaintiff's dwelling house, in the absence of plaintiff, and executing a writ of replevin on household goods located therein. It was held, under a statute quite similar to ours, that the officer had such right.

We find no case holding, or even suggesting, that, under such a statute, a sheriff, or other proper officer, has not the right to break or by the use of force enter a dwelling for the purpose of executing a writ of replevin or of taking possession of goods described in the affidavit.

Our attention has been arrested by the word "concealed," as used in Rem. Rev. Stat., § 714, although no point has been made of the matter by counsel in their briefs. It might be argued that, under the facts in this case, there was no *concealment* of either the range or the refrigerator, because they were located, and were being used, in the very place and in the very manner intended by both vendor and vendee.

However, according to the specific directions of the statute, the sheriff, upon receipt of the prescribed affidavit and bond, is required *forthwith* to take the property described therein, if it be in the possession of the defendant or his agent. If the property be located in a building or inclosure, though beyond his immediate view, the sheriff is under no duty to determine first whether the property is actually in use or is in its customary place, or whether, on the contrary, it has been concealed in some secret place within the building. In the very nature of things, he cannot, nor could he be expected to, determine a matter of that kind. His duty, as an officer of the law, is measured and dictated by the mandate of the statute, which requires him to take the property, after he has made public demand therefor. When such demand has been made, and delivery has been refused, the property is, in law, concealed, so far as the sheriff is concerned.

The facts in this case, as determined by the verdict, demonstrate that the officer used no more force than was necessary, and that he proceeded throughout in a reasonable manner.

Appellant makes the contention that the affidavit for claim and delivery, the summons, and the bond upon which the sheriff proceeded, did not, taken together, constitute process, because no writ was issued out of a court. Regardless of whether or not those instruments are to be technically considered as "process,"

they are all that the statute required. Under the procedure prescribed for "claim and delivery," no judicial writ of replevin is necessary. The law contemplates that, when the requirements of the statute have been met, the sheriff shall take the property into his custody, hold it for three days, and, if a redelivery bond be not executed by the defendant, deliver the property to the plaintiff.

Appellants next contend that, if Rem. Rev. Stat., § 714, be construed to include a dwelling house, it is violative of the fourteenth amendment of the Federal constitution and Art. I, § 3, of the Washington constitution. With that contention we cannot agree. Under the statute, the appellant was not deprived of her property in the constitutional sense. She was merely deprived of the possession of it for the time being, and then only if she failed to give a redelivery bond. She is given full opportunity to be heard in the replevin action, and is fully protected by the bond which the plaintiff therein was required to execute. *State ex rel. German Sav. & Loan Soc. v. Prather,* 19 Wash. 336, 53 Pac. 344, 67 Am. St. 729.

Since the deputy sheriff entered the building lawfully, appellant's resistance to the execution of the writ was unlawful and constituted a violation of Rem. Rev. Stat., § 2366 [P. C. § 9070], which provides that a person who shall wilfully resist, delay or obstruct a public officer in discharging or attempting to discharge any legal duty of his office, shall be guilty of a misdemeanor.

The judgment is affirmed.

Robinson, Simpson, Jeffers, and Driver, JJ., concur.

Blake, C. J. (dissenting)—Until the legislature gives specific authority to officers to break into a dwelling house to execute a writ of replevin, I cannot acquiesce

in a decision which sustains their right to do so. And, in view of the distinction always maintained in English and American jurisprudence between the *dwelling house* and other buildings, I think the court is not warranted in holding that the legislature of 1854, in enacting Rem. Rev. Stat., § 714 [P. C. § 8428], ever contemplated that the term "building" would ever be construed to mean *dwelling house.*

Our statutes defining first and second degree burglary (Rem. Rev. Stat., §§ 2578, 2579 [P. C. §§ 8771, 8772]) and first and second degree arson (Rem. Rev. Stat., §§ 2572, 2573 [P. C. §§ 8752, 8753]) recognize and apply this traditional distinction between "the dwelling house" and "a building." It is of the very spirit of our law that the dwelling house may not be entered except under *judicial process* issued upon a showing of probable cause.

Heretofore, it has been deemed an almost universal rule that an officer could not force entry into a dwelling house to serve process or seize property under an execution or a writ of attachment in the absence of specific legislative authority so to do. Freeman on Executions, § 256; *Ilsley v. Nichols,* 29 Mass. (12 Pick.) 269, 22 Am. Dec. 425; *State v. Armfield,* 9 N. C. 246, 11 Am. Dec. 762; *Calvert v. Stone,* 10 Monroe (Ky.) 152; *People v. Hubbard,* 24 Wend. (N. Y.) 369, 35 Am. Dec. 628; *Swain v. Mizner,* 8 Gray (Mass.) 182, 69 Am. Dec. 244; *Snydacker v. Brosse,* 51 Ill. 357, 99 Am. Dec. 551; *Welsh v. Wilson,* 34 Minn. 92, 24 N. W. 327; *State v. Whitaker,* 107 N. C. 802, 12 S. E. 456; *Kelley v. Schuyler,* 20 R. I. 432, 39 Atl. 893, 78 Am. St. 887, 44 L. R. A. 435; *Foley v. Martin,* 142 Cal. 256, 71 Pac. 165, 75 Pac. 842; *Hillman v. Edwards,* 28 Tex. Civ. App. 308, 66 S. W. 788; *Singer Sewing Mach. Co. v. Mendoza,* 62 S. W. (2d) (Tex. Civ. App.) 656.

These were all cases in trespass to recover damages

from the officer executing the process—the process varying in different instances: summons, execution (general or specific), attachment, and replevin. What may be called the leading case in this country is *Ilsley v. Nichols, supra,* the opinion being written by Chief Justice Shaw. The defendant, deputy sheriff, forced the doors of plaintiff's dwelling house to execute a valid writ of attachment. The contention was made that damages could be recovered only for the forcible entry and not for the seizure of the property, inasmuch as the writ of attachment was valid. Rejecting the contention, the chief justice said in part:

"No question is made of the plaintiff's right to recover; but the question turns upon the amount of damages. . . .

"The circumstances to be taken into consideration are, that the goods were in a dwellinghouse, and were attached in consequence of the house being broken open by forcing the outer door, that the direct and avowed purpose of breaking open the house, was to make an attachment, and that this was done against the will and contrary to the express prohibition of the owner. It is clear, from all the authorities, and wholly undisputed as a rule of law, that the act of thus breaking the outer door of a dwellinghouse, is unlawful. The goods were attached in pursuance of a previous design, and through the medium of this unlawful act, and could not have been otherwise attached; and the question is, whether the attachment was valid, and constituted a legal lien on the goods. . . .

"An officer, having a valid writ, if he does not pursue the authority given him by his writ, and the rules of law in the execution of his duty under it, is a trespasser, in the same manner as if he had no writ; as if he takes goods not belonging to the debtor, or goods exempted by law from attachment, trespass lies. This proceeds on the ground that the writ affords him a definite and limited authority only, regulated by law; and the legal justification of his acts is coextensive with his legal authority, and he has no protection when acting be-

yond the scope of that authority. The authority is given upon this restriction and condition, that it shall not be abused or exceeded, or colorably used to effect an unlawful purpose. To accomplish this the rule is well established, that where an authority given by law is exceeded, the party loses the benefit of his justification, and the law holds him a trespasser *ab initio,* although to a certain extent he followed the authority given. The law will operate retrospectively to defeat all acts, thus done under color of lawful authority, when exceeded; and *a fortiori* will it operate prospectively to prevent the acquisition of any lawful right, by the excess and abuse of an authority given for useful and beneficial purposes.

"But upon more general grounds, assuming the question to be open for examination, both upon considerations of principle and policy, it appears to the Court, that it would be dangerous to establish the rule, that although a man's house is his castle, his asylum, and it shall not be forced for the purpose of serving civil process, and upon a balance of the considerations of expediency, the law holds it wise to allow this exemption in favor of the peace and security of families by day and by night, even though the service of civil process is thereby delayed or defeated, yet that a legal right of property may be acquired by the direct violation of this settled and salutary principle of law. *Such a decision would afford a direct encouragement to the rash and turbulent creditor, to violate the rules of law and do that which might lead to an open breach of the peace, by giving legal effect to his attachment, if he can procure force enough to make one by unlawful and violent means.* It is to be recollected that an officer, whilst acting within the scope of his authority, and in conformity to the rules of law, is not only entitled to the protection of the law, but has power to command the assistance of all other citizens; and the law extends the like protection to them. But it would be placing such officer and his assistants in a most critical and questionable predicament if they could be employed in making a lawful attachment by unlawful means. Should the officer refuse to make an attach-

ment under these circumstances, even where the doors are forced by others for the purpose of enabling him to enter and make the attachment, would he be responsible to the creditor for the non-feasance? Would citizens be liable to damages, or to punishment, were they to refuse to aid an officer who should undertake to make such attachment? Should resistance be made from within, and force be repelled by force, would not the assailants be acting unlawfully, would not the owner and inmates of the house be acting lawfully? Should death ensue, would it not be murder in the assailants? But it is unnecessary to multiply questions with a view to suggest all the possible ill consequences which must arise, from holding that the act is wrongful, and yet that a valid right can be acquired by means of such wrong act. The consequences must be obvious. If such a transaction can take place in the day time, it may in the night. If the owner of the house may defend by force himself, he may call in the assistance of others. If his house is assailed by force, he may use adequate force to repel it. To such a conflict of rights and powers, we think the establishment of the proposition contended for by the defendants would directly lead. They can only be avoided by either legalizing the attachment and the means of effecting it, by authorizing the officer to break open the doors of a dwelling-house to serve civil as well as criminal process, and by placing within his reach a sufficient force to enable him to accomplish it, by holding all resistance unlawful, and by thus throwing around the officer and his assistants the broad shield of the law for their protection; or else, by holding that when the means are unlawful, all the declared objects and purposes to be accomplished thereby are alike unlawful, and that no legal right can thereby be acquired, either by the officer himself or by his employers. But as it is a well settled rule of law, established upon considerations of policy, that the doors of a dwellinghouse cannot lawfully be forced for the service of civil process, we think it follows, as a necessary legal consequence, that no valid attachment can be thereby made." (Italics mine.)

In commenting on *Keith v. Johnson,* 1 Dana (Ky.) 604, 25 Am. Dec. 167, Freeman, in his work on Executions (3d ed.), Vol. III, p. 2457, says:

"It has been held that he [the sheriff] may, after first demanding admittance, break into the defendant's dwelling, whether the outer doors be fastened or not. The more recent decisions, however, indicate that, *in the absence of statutes specially authorizing it, an officer is in no case warranted in breaking into a dwelling for the purpose of serving any civil process,* and hence that he may not lawfully do so under an execution in replevin." (Italics mine.)

I think the judgment should be reversed and the cause dismissed.

MILLARD, MAIN, and BEALS, JJ., concur with BLAKE, C. J.

[1]Reported in 103 P. (2d) 1076.