[No. 885-42565-2.   Division Two.   December 6, 1972.]

BARBARA THAYER, *Respondent,* v. LYNNE EDMONDS *et al.,* *Petitioners.*

*O. H. Husemoen* (of *Walstead, Mertsching, Husemoen & Donaldson*), for petitioners.

*R. Graham Cross* (of *Klingberg, Houston, Reitsch, Cross & Frey*), for respondent.

PEARSON, J.— This case is before us on a petition for writ of certiorari seeking review of the trial court's order denying motion of defendant, Lynne Edmonds, to quash service of process. Where the right of appeal appears to be

an inadequate remedy, an appellate court may in the exercise of its discretion review an order denying a motion to quash service of process. *McKinney v. Northwest Tractor & Equip. Corp.*, 41 Wn.2d 372, 249 P.2d 401 (1952). *See also Oliver v. American Motors Corp.*, 70 Wn.2d 875, 425 P.2d 647 (1967). Since the order sought to be reviewed effectively precludes defendant from raising a total defense to the action based on the statute of limitations, and both parties agree that substantial hardship and costs will be incurred if they are required to perfect an appeal after trial on the merits, the writ will lie. We turn now to the facts surrounding the disputed service of process.

This action arose out of an automobile accident that occurred on April 3, 1969. On March 27, 1972, 7 days before the statute of limitations ran, plaintiff, a resident of California, filed her complaint, naming Lynne Edmonds,[1] the petitioner herein, and her parents as defendants. At about 8 p.m. on June 26, 1972, the last day allowed for service of process under RCW 4.28.005[2] and RCW 4.28.010,[3] Mr. Brand, plaintiff's process server, located the residence of defendant's parents. Prior to this date, none of the defendants had avoided service in any way. The last minute rush was solely the result of plaintiff's tardiness (and incidentally not the result of any omission of her current counsel). When Mr. Brand found no one at the Edmonds home, he

---

[1]Miss Edmonds' name had been changed by marriage to Lynne Edmonds Callos, subsequent to the accident.

[2]RCW 4.28.005 provides: "The time within which an act is to be done shall be computed by excluding the first day and including the last. If the last day falls on a Sunday it shall be excluded."

[3]RCW 4.28.010 provides: "Civil actions in the several superior courts of this state shall be commenced by the service of a summons, as hereinafter provided, or by filing a complaint with the county clerk as clerk of the court: *Provided,* That unless service has been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the date of filing the complaint: *Provided further,* That an action shall not be commenced for the purpose of tolling any statute of limitations unless pursuant to the provisions of RCW 4.16.170."

waited. Shortly before 11:30 p.m., Mrs. Callos' brother, Craig, returned home. Craig Edmonds was in his late teens and Mr. Brand served the parents through him. No question is raised about the validity of this service. Mr. Brand discovered that the young man had just driven home from his sister's house and that she had been up and about in the house when Craig left. Mr. Brand asked and was permitted to use the Edmonds' home telephone to call Mrs. Callos. Mrs. Callos testified that she and her husband were in bed and almost asleep when the phone call came. Mr. Brand informed her that he had a summons and complaint that had to be personally delivered to her before midnight and that he was then at her mother's house and intended to come to her home to give her the papers that night. Mrs. Callos gave him directions to her house, but at her husband's insistence told him that she was not going to wait up and would not answer the door. Mrs. Callos then testified as follows:

Q He told you that he would leave the papers in the door if you didn't come to the door?
A Yes.
Q You said, "That's fine, we are not going to wait up for you."
A Yes.
Q And you or your husband said that it has been three years and if it has been that long it can wait until tomorrow?
A Yes.
Q You understood the papers arose out of that accident that occurred three years ago?
A Yes, eventually.
Q You were confused at first?
A Yes.
Q But he did make it clear to you finally in the end someone was suing you and he had to serve papers prior to midnight as a result of the accident that occurred three years ago?
A Yes.

Mr. Brand left the Edmonds residence at 11:30 p.m. and arrived at the Callos residence at 11:50 p.m. He knocked on

the door and called for Mrs. Callos. When he heard no answer, he placed the papers between the door and door-jamb and left. Mrs. Callos was awake when he came, but said she did not hear him knock or call. The next morning at 6:30 a.m. she opened the door and personally obtained the papers.

Defendant argues vigorously that RCW 4.28.080(14),[4] the applicable statute governing service of process, must be strictly construed. *Muncie v. Westcraft Corp.*, 58 Wn.2d 36, 360 P.2d 744 (1961). Defendant urges that, under a strict construction, leaving process in defendant's door cannot constitutes either actual or substituted service. *Muncie,* however, involved a construction of RCW 46.64.040, the nonresident motorist service of process statute. The statute here under consideration was given a liberal construction in *Lee v. Barnes,* 58 Wn.2d 265, 362 P.2d 237 (1961), where an agreement for a method of substituted service was upheld, even though such method was not expressly authorized by the statute.

We note that *Lee* and *Muncie* were decided within 2 months of each other by departmental decisions of the Supreme Court. In our opinion, they are not inconsistent. Inherent in *Muncie* is the fact that a nonresident motorist may not receive actual notice of a pending action under the *substituted* service provision unless the steps for accomplishing such substituted service are strictly followed. *Lee,* on the other hand, permits a variation of the prescribed statutory method for personal service, where actual notice of the pending action will, in all probability, be accomplished. The distinction, then, is that constructive and substituted service statutes require strict compliance, while personal service statutes require substantial compliance. *See Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,*

---

[4]RCW 4.28.080 provides, in part: "The summons shall be served by delivering a copy thereof, as follows:

". . .

"(14) In all other cases, to the defendant personally, or by leaving a copy of the summons at the house of his usual abode with some person of suitable age and discretion then resident therein."

66 Wn.2d 469, 403 P.2d 351 (1965). In view of the holding in *Lee*, we think that a strict construction of RCW 4.28.080 (14) would be inappropriate under the circumstances of this case.

Although this statute need not be strictly construed, we do agree with defendant that the 11:30 p.m. telephone conversation between the process server and Mrs. Callos was insufficient to satisfy the requirements of the statute. While this communication did give defendant actual knowledge of pending litigation, such notice standing alone is insufficient to impart the statutory notice required to invoke the court's in personam jurisdiction. *Interior Warehouse Co. v. Hays*, 91 Wash. 507, 158 P. 99 (1916). It is not our intention to say that actual knowledge may not also be required. Of course, notice reasonably calculated, under all the circumstances, to apprise interested parties of a pending action is a matter of constitutional due process. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950). *See also Tonelson v. Haines*, 2 Ariz. App. 127, 406 P.2d 845 (1965). But beyond due process, statutory service requirements must be complied with in order for the court to finally adjudicate the dispute between the parties.

We now consider the primary question—was proper and timely service of process accomplished? While plaintiff herself was extremely dilatory in commencing her action, the legislature, by statute, permits service of process to be made up until midnight of the 90th day following the filing of the complaint. RCW 4.28.010. Moreover, if the 90th day is a Sunday, as in this case, an additional 24 hours is permitted. RCW 4.28.005. By contrast, the legislature, by statute, has restricted the service of certain notices to the hours between 6 a.m. and 9 p.m. RCW 4.28.240. Given plaintiff's tardiness, however, her process server acted reasonably under the circumstances. At 11:30 p.m., Mr. Brand learned from Craig Edmonds that Mrs. Callos had been awake only a few minutes earlier, even though the hour was late. He telephoned her, told her of his mission, and

requested her to wait for him. We think that this course of conduct was reasonable.·

Even though Mr. Brand acted reasonably in notifying Mrs. Callos of his intention to come to her home and deliver the process, she did not thereby come under any obligation to assist the process server. Mrs. Callos' duties were to accept service when validly tendered and not to evade service. *Gumperz v. Hofmann,* 245 App. Div. 622, 283 N.Y.S. 823 (1935). *Cf. Bethel v. Sturmer,* 3 Wn. App. 862, 479 P.2d 131 (1970). At the hearing on the motion to quash, the trial court found that Mrs. Callos was awake when the process server came and knew the purpose of his visit. These factual findings are supported by substantial evidence. When Mr. Brand knocked on the door and called out to Mrs. Callos, he did everything that could be legally required of him under the circumstances. *Cf. State v. Pope,* 4 Wn.2d 394, 103 P.2d 1089, 129 A.L.R. 240 (1940). The trial court concluded that Mrs. Callos' actions constituted willful evasion. We disagree. Mrs. Callos did nothing to avoid a confrontation with the process server. In fact, she directed him to her house and even indicated that she would accept the papers from him personally on the following morning. Understandably, she told Mr. Brand over the telephone that she could see no reason why the papers could not be delivered the next day.

Mr. Brand, however, insisted the·papers had to be delivered before midnight and that if she did not answer his knock, he would leave the papers in the door. She answered, "That's fine, we are not going to wait up . . ." Under the circumstances, we think Mrs. Callos' statement constituted an authorization to leave the process in the door. Admittedly, RCW 4.28.080 (14) does not, in so many words, specify that a defendant may authorize the process server to leave the papers at a place where they can be easily retrieved, rather than physically handing them to the defendant. Like the court in *Lee v. Barnes, supra,* however, we can discern no reason of public policy why a defendant should not be able to authorize delivery in a

manner not enumerated in the statute, and under the circumstances of this case we hold that such delivery constituted a substantial compliance with the statute. We wish to emphasize that those who are to be served with process are under no obligation to arrange a time and place for service or to otherwise accommodate the process server. On the other hand, we see no reason why they should not be able to do so if it suits their convenience, where the requirements of constitutional due process in all other respects are fully met.

Counsel has not brought any case to our attention, nor does our research disclose any, in which such an arrangement between a defendant and a process server has been considered. In those cases we have considered on the question of the adequacy of service, we find that the person upon whom service was sought took affirmative action to avoid delivery of process. As indicated above, we find no concealment or evasion of process on the part of defendant. Instead, we find a reasonable response on the part of both the process server and the defendant to a rather unusual set of circumstances. That response satisfies constitutional due process and substantially complies with the requirements of RCW 4.28.080 (14).

The order denying defendant's motion to quash service of process is affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied January 11, 1973.

Review denied by Supreme Court March 6, 1973.