FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF
WALLA WALLA, *Respondent*, v. HELEN M.
EKANGER, *Appellant*.

WILLIAM PRITCHARD, ET AL, *Respondents*, v.
HELEN M. EKANGER, *Appellant*.

*Critchlow, Williams, Ryals & Schuster* and *Richard M. Knoeber*, for appellant.

*Peterson, Taylor, Day & Shea, Stanley D. Taylor, Minnick, Hayner & Zagelow, H. H. Hayner*, and *George E. Heidlebaugh*, for respondents.

GREEN, C.J.—The defendant, Helen Ekanger, moved the court to set aside a decree of foreclosure taken against her by the plaintiff, First Federal Savings and Loan Association of Walla Walla. The parties agreed to consolidate the motion with a quiet title action brought against Mrs. Ekanger by Mr. and Mrs. Pritchard, the purchasers of the property which was the subject of the foreclosure. The trial court denied Mrs. Ekanger's motion and quieted title to the property in the Pritchards. Mrs. Ekanger appeals.

One issue is presented: Is a defective affidavit in support of service by publication fatal to jurisdiction, or may the defect be cured by amendment?

Mrs. Ekanger owned a home in Kennewick which was subject to a mortgage in favor of First Federal Savings and Loan Association of Walla Walla. She first mortgaged her home to First Federal in March 1968. Shortly thereafter, she became delinquent in her payments and First Federal foreclosed its mortgage and the home was sold. She then persuaded First Federal to make her a new loan in the sum of $20,000. With these funds plus her own, she was able to redeem her house. A new mortgage was executed in June 1971 to secure the new loan.

Beginning in July 1975, she again failed to make her mortgage payments. First Federal wrote her numerous letters and attempted to reach her by telephone concerning her defaults. She wrote a check for the July and August payments but the check was returned to First Federal for insufficient funds. During September, First Federal wrote five letters to Mrs. Ekanger requesting payment. Finally, on September 22 she was informed by letter that unless she had arranged to cure her default by September 30, a foreclosure action would be instituted. Because First Federal could not reach Mrs. Ekanger by telephone, it sent five telegrams, in addition to the just-mentioned letters, warning her that a foreclosure action would be instituted unless she contacted its office immediately. On the last day, September 30, Mrs. Ekanger telephoned First Federal's Kennewick office and requested that they see her after their normal

4:15 p.m. closing hour. When she did not appear by 5:15 p.m. they closed the office. On October 2, she again telephoned the First Federal office and requested the amount necessary to reinstate the account. Mrs. Ekanger stated a cashier's check would be in the mail by October 2. The check never arrived, and on October 9, First Federal informed Mrs. Ekanger by letter that her file was being referred to counsel for the necessary legal action. On November 6, 1975, foreclosure proceedings were filed.

Shortly thereafter, Mrs. Ekanger sought a loan from First Federal to resolve the default. This request was declined on November 20, because their investigation disclosed (1) an unsatisfactory account payment record, (2) a bankruptcy petition, (3) pending legal actions, and (4) she was unable to meet minimum loan processing standards. Accordingly, counsel was requested to proceed with the foreclosure.

On November 28, the summons and complaint for foreclosure were delivered to the Benton County Sheriff for service upon Mrs. Ekanger. Fourteen attempts were made to serve her at her home during the period of December 1 to 5. These attempts were made several times a day at widely varying hours. Although there was a car in the garage on a couple of occasions and dogs barking in the house, no one would answer the door. The sheriff's office returned the papers unserved and a "not found" return was filed. The papers were sent to First Federal's branch manager requesting that he or someone try to serve them. Further attempts at service were to no avail.

At this point counsel determined to undertake service of a summons by publication. Accordingly, on January 6, 1976, a copy of the summons and complaint was mailed to Mrs. Ekanger at her home. First Federal's attorney filed the following affidavit in support of service by publication:

STATE OF WASHINGTON ⎫
⎬ ss.
COUNTY OF WALLA WALLA ⎭

H. H. Hayner, being first duly sworn, on oath deposes and says: That he is one of the attorneys for the plaintiff

in the above–entitled action; that the place of residence of the defendant Helen M. Ekanger is 827 West 24th, Kennewick, Washington; that numerous attempts have been made by the Benton County Sheriff and by personnel of the plaintiff corporation to serve said defendant; that although the defendant Ekanger is a resident of this state she cannot be found therein.

/s/      H. H. Hayner

Subscribed and sworn to before me this 14 day of January, 1976.

/s/      Carmen Cobb
Notary Public in and For
the State of Washington,
residing at Walla Walla

The first publication occurred on January 22. A decree of foreclosure was entered on April 8, and on April 15 an order of sale was entered. On April 16, the order of sale was posted on the front door of Mrs. Ekanger's home and on May 21 the sheriff sold the property to Mr. and Mrs. Pritchard for $25,000.[1] The court confirmed the sale and directed disbursement to First Federal of about $21,000 to satisfy the mortgage and foreclosure cost. The remaining sum was garnisheed by other creditors of Mrs. Ekanger. On January 21, 1977, the statutory period of redemption—8 months—expired. RCW 6.24.140. At no time did Mrs. Ekanger enter any of these proceedings.

On February 24, 1977, Mrs. Ekanger moved to set aside the decree of foreclosure on the ground that the court was without jurisdiction to enter the decree. Mrs. Ekanger pointed out, as she does here, that the affidavit in support of the service by publication did not comply with the requirements of RCW 4.28.100[2] in two respects: (1) it did

---

[1] This appeal is not predicated upon any challenge to the sale price.

[2] RCW 4.28.100 provides:
"When the defendant cannot be found within the state (of which the return of the sheriff of the county in which the action is brought, that the defendant cannot be found in the county, is prima facie evidence), and upon the filing of an affidavit of the plaintiff, his agent, or attorney, with the clerk of the court, stating that he believes that the defendant is not a resident of the state, or cannot be found

not state the nature of the action, and (2) it did not state that a copy of the summons and complaint had been mailed to her. On May 31, 1977, First Federal, in effect, moved for leave to file an affidavit amending the original affidavit to reflect, *inter alia,* the mailing of a summons and complaint to Mrs. Ekanger on January 6, 1976, and that the object of the action was to foreclose a mortgage. The trial court accepted the amended affidavit, denied the motion to vacate and quieted title to the property in the Pritchards. This appeal followed.

Mrs. Ekanger's position is that (1) the affidavit filed in support of service by publication was defective in that it did not comply with the requirements of RCW 4.28.100; (2) the defective affidavit cannot be cured nunc pro tunc by amendment; (3) as a consequence the service was void, and therefore, (4) the court was without jurisdiction to enter the decree of foreclosure. In support of this position, she relies upon *Burns v. Stolze,* 111 Wash. 392, 191 P. 642 (1920); *Lutkens v. Young,* 63 Wash. 452, 115 P. 1038 (1911); *Felsinger v. Quinn,* 62 Wash. 183, 113 P. 275 (1911); and *McManus v. Morgan,* 38 Wash. 528, 80 P. 786 (1905). On the other hand, First Federal argues that the defect in the affidavit was one of form, rather than substance, because the summons and complaint had in fact been mailed to Mrs. Ekanger prior to the filing of the affidavit and she does not deny receiving it. The affidavit merely failed to record that fact. Further, the complaint discloses that the action was one of foreclosure and thus brings it within the statute authorizing service by publication. It

---

therein, and that he has deposited a copy of the summons (substantially in the form prescribed in RCW 4.28.110) and complaint in the post office, directed to the defendant at his place of residence, unless it is stated in the affidavit that such residence is not known to the affiant, and stating the existence of one of the cases hereinafter specified, the service may be made by publication of the summons, by the plaintiff or his attorney in any of the following cases:

"...

"(6) When the action is to foreclose, satisfy, or redeem from a mortgage, or to enforce a lien of any kind on real estate in the county where the action is brought, or satisfy or redeem from the same;"

contends that it should be permitted to amend its original affidavit to reflect what had occurred and relies upon CR 4(h):

> At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.

We hold that the amended affidavit was properly considered and affirm the trial court.

■ When our state adopted the federal rules of civil procedure, it in essence determined that substance should prevail over form and that actions should be determined on the merits, not by technical rules that prevent such determinations. This approach is outlined in *Curtis Lumber Co. v. Sortor*, 83 Wn.2d 764, 766–67, 522 P.2d 822 (1974):

> In 1967, this court completely revised the Washington rules of civil procedure. The goal, as stated at the time, was "[t]o eliminate many procedural traps now existing in Washington practice;" Foreword to Civil Rules for Superior Court, 71 Wn.2d xxiii, xxiv (1967). The instant case provides a prime example of an anomalous, purely accidental, unnecessary but fatal procedural snare for the unwary or less fleet of foot. The new rules should serve as a manual or bible of civil procedure. Hopefully, careful adherence to the rules of the manual will avoid embarrassment to members of the bar because of delay and even the loss of lawsuits occasioned by unnecessarily complex and vagrant procedural technicalities. In other words, *the basic purpose of the new rules of civil procedure is to eliminate or at least to minimize technical miscarriages of justice inherent in archaic procedural concepts* once characterized by Vanderbilt as "the sporting theory of justice."
>
> Whatever purpose it was thought was served by the interpretation rendered in *City Sash & Door Co.* [*City Sash & Door Co. v. Bunn*, 90 Wash. 669, 156 P. 854 (1916)] in 1916 certainly seems no longer particularly pertinent in today's era of modern, streamlined rules of civil procedure.

(Italics ours.) In that case, the court overruled 57 years of precedents in applying the new rules of, civil procedure in a lien foreclosure action. This approach was again adopted when the Supreme Court revised the rules of appellate procedure in 1976. RAP 1.2(a) states:

These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands, subject to the restrictions in Rule 18.8(b).

It is apparent that the trend of the law in this state is to interpret rules and statutes to reach the substance of matters so that it prevails over form.[3]

█ Bearing these principles in mind, we turn to the facts in this case. It is clear from the complaint on file that First Federal's action was one for foreclosure and service by publication is specifically authorized by RCW 4.28.100 in such cases. Under this statute, service by publication is authorized when a defendant cannot be found in the state and an affidavit is filed setting forth that fact and that a copy of the summons and complaint has been mailed to the

---

[3]*See, Malott v. Randall,* 83 Wn.2d 259, 517 P.2d 605 (1974), in which the court interpreted CR 58, which provides that "judgments shall be deemed entered . . . from the time of delivery to the clerk for filing . . .", as meaning that the judgment must in fact be filed before the time for filing a notice of appeal begins to run. *See also Moore v. Burdman,* 84 Wn.2d 408, 526 P.2d 893 (1974), where the court refused to strictly enforce the time for filing a writ of certiorari in a child deprivation case when the delay in filing was caused by postal authorities; and *Thayer v. Edmonds,* 8 Wn. App. 36, 503 P.2d 1110 (1972), where the court held that process left at the defendant's door at 11:30 p.m. was sufficient when the process server had first spoken with the defendant by telephone and the defendant told him that she would not wait up for him. However, in *Schell v. Tri-State Irrigation,* 22 Wn. App. 788, 591 P.2d 1222 (1979), the Court of Appeals decided that the trial court had no jurisdiction over the out-of-state defendants because the plaintiff had not filed an affidavit, as required by RCW 4.28.185(4), to the effect that service could not be made within the state. *Schell* is distinguishable from the instant case. In *Schell,* the plaintiff completely failed to comply with the requirement for filing an affidavit. Here, the plaintiff filed the affidavit, but inadvertently omitted certain language. The latter case amounts to substantial compliance with the statute, while in *Schell* there was no compliance at all, and, therefore, there was nothing to amend.

defendant at his place of residence, if known. This affidavit is to be filed in the proceeding prior to commencement of publication. It is not sent to the defendant. Its only purpose is to inform the court that the conditions necessary for publication were extant.

CR 4(d)(3) incorporates the publication statute: "Service of summons and other process by publication shall be as provided in RCW 4.28.100 . . ." As previously mentioned, that same civil rule, under subsection (h), allows the amendment of process, within the discretion of the court. The inference is that service by publication may also be amended.

Here, First Federal made an exhaustive effort to personally serve Mrs. Ekanger, but was unable to do so. This was attested to in the affidavit that was filed prior to publication. At that point, service by publication was the only alternative open to First Federal. It therefore mailed the summons and complaint to Mrs. Ekanger and proceeded to publish. Mrs. Ekanger does not contend that she was ignorant of the foreclosure action. In fact, she received exactly the same notice she would have received had there been no omissions in the affidavit. With actual knowledge of the foreclosure and of the sale, she chose to remain silent. In these circumstances, the requirement that the affidavit state that the summons and complaint has been mailed to the defendant's last address is a technicality that should not prevent the court from recognizing the substance of what occurred. The absence of this language in the affidavit did not materially prejudice Mrs. Ekanger's rights because these documents in fact had been sent to her. Therefore, the trial court exercised sound discretion when it allowed First Federal to amend the affidavit nunc pro tunc.[4]

---

[4]*Cf. Robert W. Irwin Co. v. Sterling,* 14 F.R.D. 250 (W.D. Mich. 1953), in which the federal district court allowed amendment under CR 4(h) of affidavits for writs of garnishment although the affidavits were considered jurisdictional in nature.

The cases relied upon by Mrs. Ekanger antedate the adoption of the civil rules by over 40 years. They were decided in the era of code pleading and in a time in which many facets of the law were governed by technical rules, where form often prevailed over substance. The present philosophy of the law as expressed by the rules of civil procedure and interpretive decisions lead us to conclude that the early case law in this area is no longer applicable. Moreover, *Lutkens* and *Felsinger* are distinguishable from the present situation because in those cases the process had never been mailed. Here, First Federal complied with the statutory requirements. It merely failed to record that compliance.

Affirmed.

McINTURFF, J., concurs.

ROE, J. (dissenting)—The question in this case is *whether the court ever had jurisdiction* to foreclose the mortgage since the affidavit filed in support of the foreclosure did not comply with the requirements of the statute. If the court never had jurisdiction, then post facto attempts by the mortgagee to remedy the defects by filing the supplemental affidavit and pointing to certain other documents in the record are unavailing. Such attempts cannot retroactively confer jurisdiction. The majority overrules the case law in this state and ignores the specific statute, RCW 4.28.100, by referring to the rule of court CR 4(h).

We should not be misled by the careless, inexcusable conduct of Mrs. Ekanger, the mortgagor, in attempting to avoid service, nor by her previous poor credit record, nor that she must have known of the foreclosure action. Equally irrelevant is the fact that the house sold, according to her counsel's representation, for approximately one-half of its market value of $50,000, and that this distraught mother–mortgagor is attempting to care for two children and keep a home for them and herself and that should this judgment be vacated, she has arranged for credit so that

she could pay off the mortgage and be assured of a home with her family.

It cannot be gainsaid that knowledge of the fact that a lawsuit may have been filed against a party is not equivalent to service. An action is not started if service is defectively made. Citation of authority is hardly necessary to hold service invalid in those cases where a substituted service is attempted by giving the papers to another person of suitable age and discretion at a place where the named defendant is a guest and not a resident. *John Hancock Mut. Life Ins. Co. v. Gooley,* 196 Wash. 357, 83 P.2d 221 (1938) (hotel), or those where a summons and complaint are handed to one person, who then gives it to the named defendant. *Ashcraft v. Powers,* 22 Wash. 440, 61 P. 161 (1900) (attorney). Nor are we concerned with those cases where there is a defect in the affidavit of service, because then it is service which gives jurisdiction, not proof thereof, and the proof or the formal written return may be amended. Such cases allowing amendment to proof of service cited in the mortgagee's brief are irrelevant. Rather, we are concerned with whether or not the court acquired jurisdiction in the first instance.

The majority cites no case involving a mortgage foreclosure to support its position. Nor are the equities in its favor. It would strike most attorneys rather strange that foreclosure of a mortgage on a resident effecting a deprivation of a home could take place by publication where the party's mailing address is known, where there has been constant telephonic communication with the person, the car is in the garage, barking dogs are in the house, and the person is well known. Service by publication would be most unusual.

RCW 4.28.100 requires that the affidavit by the plaintiff or his agent be filed with the clerk of the court, and state, among other things, that there has been deposited a copy of the summons and complaint in the post office directed to the defendant at the place of residence and that when the action is to foreclose a mortgage or to enforce a lien on any

kind of real estate that that type of action justifying service by publication be stated therein.

In *Thompson v. Robbins*, 32 Wash. 149, 72 P. 1043 (1903), an action by the plaintiff to foreclose a lien for taxes on certain lands, the plaintiff made a mistake in his summons which required the defendant to appear within 60 days after service rather than 60 days after date of publication. Hence, the summons was not in accordance with the statute and did not confer jurisdiction upon the court to render the default judgment which had been entered in the foreclosure proceeding. The court stated:

> It is the general, if not the universal, rule that "the right to serve process by publication being of purely statutory creation and in derogation of the common law, the statutes authorizing such service must be strictly pursued in order to confer jurisdiction upon the court."

*Thompson v. Robbins, supra* at 152. Default judgment in that case was then set aside.

In *Felsinger v. Quinn*, 62 Wash. 183, 113 P. 275 (1911), an affidavit for service of summons by publication was defective in that it did not state that the defendant was a nonresident or had property in this state, even though those facts did appear from the complaint. In holding that there was no jurisdiction, the court stated at page 186:

> [T]he making of the affidavit for publication, in strict compliance with the statute, is as essential to obtaining such jurisdiction as the publication of the summons itself, and an affidavit which does not contain *all the statements* specifically required by the statute is not sufficient to authorize publication of summons or confer jurisdiction.

(Italics mine.)

In *Lutkens v. Young*, 63 Wash. 452, 115 P. 1038 (1911), as in this case, there was a judgment for foreclosure of mortgage which had proceeded through to a sheriff's deed. The mortgagor claimed, after the sale, that the judgment was invalid in that no jurisdiction was obtained and that the affidavit required by the statute was fatally defective in failing to state that the residence of the mortgagor was not

known to the affiant as required by the code. In setting aside the default judgment and mortgage foreclosure, the court stated:

[W]here jurisdiction is sought to be obtained through a service by publication, the *affidavit* required by the statute shall be in *strict compliance* with all the statutory requirements, and that an affidavit which fails in any of these essentials will not support a publication of summons, *nor confer jurisdiction through such publication;*

(Italics mine.) *Lutkens v. Young, supra* at 453. That case is still the law, having never been overruled, at least until the majority in this case saw fit to do so sub silentio. The defect was sought to be cured by filing an amended affidavit, but the court stated at page 454:

It does not appear to us that this is a defect that can be remedied by amendment. The jurisdiction of the court depended upon a substituted service, which was no service unless the statutory requirements and essentials affecting it had been fully complied with. *The court had no jurisdiction from the beginning,* and this jurisdiction could not be conferred by amendment so long after the entry of judgment.

(Italics mine.) The court further stated:

But we know of no instance, where jurisdiction is lacking, where it is held that jurisdiction may be conferred by amendment.

*Lutkens v. Young, supra* at 454.

In *McKeand v. Bird,* 116 Wash. 208, 199 P. 293 (1921), the court held that, where the affidavit to support publication was contradictory in reference to the address, that the judgment should be vacated and repeated the rule that,

'The right to serve process by publication being of purely statutory creation and in derogation of the common law, the statutes authorizing such service must be strictly pursued in order to confer jurisdiction upon the court,'
. . .

(Citations omitted.) *McKeand v. Bird, supra* at 211.

To the same effect is *Burns v. Stolze,* 111 Wash. 392, 191 P. 642 (1920). In that case where jurisdiction was sought by

publication, the affidavit, as in the case at bench, failed to state the existence of facts contained in any one of the seven grounds authorizing service by publication. The court held that a void judgment may be attacked at any time and vacated it.

In the case at bench, the affidavit is defective in several respects. It did not state the nature of the action, that is subsection 6 of the code, that it was an action to foreclose a mortgage; it did not state that a copy of the summons and complaint had been mailed to the mortgagor. Thus, under the case law the judgment of foreclosure is void.

The majority relies on CR 4(h)[5] which purports to allow amendment of any process at any time. CR 81[6] provides that these rules apply except where inconsistent with rules or statutes applicable to special proceedings. Since CR 4(h) is inconsistent with the statute applicable to these special proceedings, the rule does not govern. The majority seeks to justify its position relying on *Curtis Lumber Co. v. Sortor,* 83 Wn.2d 764, 522 P.2d 822 (1974). *Curtis Lumber Co.* was a 5-to-4 decision not involving a mortgage foreclosure. Rather, it involved a foreclosure of a lien and whether or not the summons and complaint had to be both filed and served within the statutory 8-month period; the court extended the time for service of a summons after the court had acquired jurisdiction by the filing of the complaint within the statutory period. It does not involve a question

---

[5]"At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued."

[6]CR 81 states:

"(a) To What Proceedings Applicable. Except where inconsistent with rules or statutes applicable to special proceedings, these rules shall govern all civil proceedings. Where statutes relating to special proceedings provide for procedure under former statutes applicable generally to civil actions, the procedure shall be governed by these rules.

"(b) Conflicting Statutes and Rules. Subject to the provisions of subdivision (a) of this rule, these rules supersede all procedural statutes and other rules that may be in conflict."

of jurisdiction. Thus, that case is not in point, even if it is correct, and it well could be reconsidered. The statute of limitations for filing may be tolled in various ways. The case law indicates that the failure to strictly comply with the statutes relating to service by publication is jurisdictional and, unless complied with, any resulting judgment is void. A void judgment cannot be made to come alive by amendment because the court never had jurisdiction in the first place.

I do not believe this case can be distinguished from *Schell v. Tri–State Irrigation,* 22 Wn. App. 788, 591 P.2d 1222 (1979), cited in footnote 3 by the majority. In that case we held that the court had never acquired jurisdiction under the long–arm statute by attempted service of out–of–state defendants because plaintiff had not filed any affidavit at all. The difference between no affidavit at all and an affidavit which is fatally defective escapes me because the latter has been held to be of no effect to confer jurisdiction.

For these reasons I dissent.

Reconsideration denied May 8, 1979.

Review granted by Supreme Court August 22, 1979.

[No. 2558–3.   Division Three.   March 20, 1979.]