[No. 8466–6–I.   Division One.   September 15, 1980.]

MEADOWDALE NEIGHBORHOOD COMMITTEE, ET AL, *Appellants,* v. THE CITY OF EDMONDS, ET AL, *Respondents.*

*Evans & Quimby* and *Thomas C. Evans,* for appellants.

*Ogden, Ogden & Murry* and *Wayne Tanaka,* for respondents.

SWANSON, J.—In this action by the plaintiffs Donald Coffin and Meadowdale Neighborhood Committee (hereinafter Meadowdale), challenging approval by the City of Edmonds of a Planned Residential Development (PRD), the principal issue is whether service of process on the secretary to the mayor complies with RCW 4.28.080(2).[1] For the reasons that follow, we hold it does not.

Application for approval of the PRD was made on May 3, 1978. Listed as applicant and designer was respondent David Kinderfather. The property owner was shown to be Sierra West Construction Company. An environmental checklist was submitted with the application. This document named Sierra West Construction Company as proponent of the project.

---

[1] RCW 4.28.080 reads in pertinent part:
"The summons shall be served by delivering a copy thereof, as follows:
". . .
"(2) If against any town or incorporated city in the state, to the mayor thereof."

On May 17, 1978, an application was made, pursuant to local ordinance, for review of the PRD by the Edmonds Amenities Design Board. David Kinderfather was again shown to be the applicant, and Sierra West was identified as owner of the subject property.

After hearings before the planning commission and Amenities Design Board, the application came to the city council which granted approval on August 1, 1978. Meadowdale filed suit in Superior Court on August 31, 1978, the last day within which an appeal could be taken from the council's decision.[2] The action was designated a petition for writ of certiorari and/or declaratory relief. Named as defendants were Kinderfather and the City of Edmonds. The summons, petition, and motion and order directing the defendants to show cause why the writ should not be granted were served on Kinderfather, the city clerk, and the secretary to the mayor.[3] The owner of the property, Sierra West, was not named in the suit or served with process.

The show cause hearing was held September 15, 1978. Prior to the hearing, the City served on counsel for Meadowdale copies of the City's answer and affirmative defenses and its brief. The affirmative defenses raised included failure to join a necessary party (Sierra West) and insufficient service of process. At the hearing, however, the only ground argued by the City for quashing the writ was

---

[2]Edmonds City Code § 12.10.190 *Appeals* provides:

"Any final decision for which no other direct appeal is specifically provided in this chapter approving or disapproving any subdivision, plat, short subdivision, short plat or lot line adjustment, and for which all other appeals specifically authorized have been timely exhausted, shall be reviewable for unlawful, arbitrary, capricious or corrupt action or nonaction by writ of review before the Superior Court of Snohomish County. The action may be brought by any property owner in the city, who deems himself aggrieved thereby; provided, that application for a writ of review shall be made to the court within thirty days from any decision so to be reviewed. The cost of transcription of all records ordered certified by the court for such review shall be borne by the appellant." (Ordinance No. 1703 § 19 (1974)).

[3]The employee served was, in fact, not the mayor's regular secretary but was working temporarily while the regular secretary was on vacation.

failure to join a necessary party. The court orally refused to quash the writ, but upon reconsideration it agreed Sierra West was a necessary party. However, pursuant to CR 15(c), the court allowed Meadowdale to amend its petition to name Sierra West, and the amendment related back to the August 31 filing.

The writ subsequently issued, but on December 12, 1978, the City moved to dismiss the action for insufficient service of process. The court initially denied the motion on the ground the defense had been waived because it had not been joined with the City's previously raised defense of failure to join a necessary party. However, the court again reconsidered, determined that insufficient service had not been waived, and dismissed the action because the time limit for appeal had run. The sufficiency of service is thus the threshold issue.

■ Meadowdale acknowledges the general rule: When a statute designates a particular person or officer upon whom service of process is to be made in an action against a municipality, no other person or officer may be substituted. 56 Am. Jur. 2d *Municipal Corporations, Counties, and Other Political Subdivisions* § 854 (2d ed. 1971); 64 C.J.S. *Municipal Corporations* § 2205(c)(3) (1950). However, the argument is made that service on the mayor's secretary was, in essence, service on the mayor himself. Reliance is placed upon this court's decision in *Thayer v. Edmonds,* 8 Wn. App. 36, 39, 503 P.2d 1110 (1972), where it was said, "constructive and substituted service statutes require strict compliance, while personal service statutes require substantial compliance." Service on the mayor's secretary, Meadowdale argues, constitutes substantial compliance with RCW 4.28.080(2). However, our view of *Thayer* is that it is distinguishable on its facts. Moreover, the doctrine of substantial compliance is inapplicable when the issue is whether service of process has been valid so as to subject a municipality to the court's jurisdiction.

Regarding the factual distinctions, we note that in *Thayer* the person upon whom process was to be served

agreed with the process server for a manner of delivery not strictly provided for by the statute. *See also United Pac. Ins. Co. v. Discount Co.,* 15 Wn. App. 559, 550 P.2d 699 (1976). Thus, the narrow holding of *Thayer* is simply that a person upon whom service is to be made may agree to *accept* service by consenting to the process server's leaving the papers at a specified place. The *Thayer* court concluded that such an agreement, when coupled with actual notice of the pending litigation, and the defendant's retrieval of the papers, amounted to substantial compliance with the statute.

Likewise, this case is distinguishable from the earlier case of *Lee v. Barnes,* 58 Wn.2d 265, 362 P.2d 237 (1961), cited by the *Thayer* court. In *Lee,* a nonresident defendant appointed a resident agent to receive service of process, and service on the agent was held to subject the principal to the jurisdiction of the court even though the statute contained no provision for that type of substituted service. Crucial to the *Lee* decision is the notion that the agreement for substituted service was a form of submission to the court's jurisdiction.

Here, the process server never spoke with the mayor to make arrangements for a mutually agreed upon manner of delivery. Moreover, the record, in the form of an affidavit by the mayor, makes clear that no one had been appointed or delegated by the mayor to accept service for the City. For these reasons, this case falls outside either the *Thayer* or *Lee* analysis.

In addition to finding Meadowdale's cited authority factually dissimilar, we think there is a more fundamental reason for holding that under the circumstances here presented service on the mayor's secretary was insufficient. The general rule is that strict compliance is required with statutes naming particular persons upon whom service of process is to be made in actions against municipalities. 17 E. McQuillin, *Municipal Corporations* § 49.32 (3d rev. ed. 1968). Application of the rule of strict compliance in other jurisdictions has yielded cases with results contrary to the

position Meadowdale urges upon us here. *E.g., Vergo v. Mulberry,* 167 Kan. 561, 207 P.2d 370 (1949) (statute required service on the mayor; service on the mayor's wife at their residence held insufficient); *Washington v. Cecil,* 53 Wis. 2d 710, 193 N.W.2d 674 (1972) (statute required service on village president or clerk; service on clerk's wife at their residence held insufficient). *See Fillyow v. County of Westchester,* 33 Misc. 2d 501, 225 N.Y.S.2d 848 (1961) (civil practice act required service, *inter alia,* on clerk of county board of supervisors; service on employee of clerk held insufficient); *Walters v. Dock Comm'n,* 126 Ore. 487, 270 P. 778 (1928) (statute required service on city clerk; service on secretary of dock commission held insufficient).

The New York court's observations in *Fillyow v. County of Westchester, supra,* are particularly relevant because of the factual similarity between that case and the case at bar. In *Fillyow,* the governing section of the civil practice act provided that in actions against the county, service was to be made on the county attorney and, in addition, on either the chairman or clerk of the board of supervisors, the county clerk, or the county treasurer. Service was duly made on the county attorney and on an employee of the clerk of the board of supervisors who stamped an acknowledgment of service on the summons. The court stated:

> The service of the summons on an employee in the office of the Clerk of the Board of Supervisors did not comply with the statute . . ., unless by some action of the Clerk service on an employee in her office was directed by her and recognized as valid . . .
>
> In this case, however, it does not appear that the Clerk of the Board of Supervisors had directed service of process to be made on the employee, or had authorized the employee to accept service. No more is asserted than that a stamp admitting service was placed on the summons by the employee. The gratuitous and unilateral act of the employee can scarcely bind the Clerk or the county.

(Citations omitted.) *Fillyow,* at 502. *See also Tuft v. Allen,* 225 N.Y.S.2d 947 (1961) (service on county attorney and deputy clerk held to not comply with statute).

The foregoing authorities illustrate that in actions involving municipalities, strict compliance with the statutory requirements of service of process is a prerequisite to the court's acquiring jurisdiction over a city. As noted, RCW 4.28.080(2) requires service of process by delivery of a copy of the summons to the mayor, and it is conceded here that this was not done.

There are public policy reasons for our decision. To hold otherwise under the factual circumstances here presented would open the door to a host of problems which would inevitably arise in similar situations. Courts would be called upon to decide, for example, whether delivery of the summons to a deputy mayor is sufficient, or to a mayor's administrative assistant, or to the secretary to an administrative assistant, and so on. Confusion and uncertainty can be avoided by interpreting the statute according to its plain terms.[4]

■ We recognize Meadowdale's contention that although the mayor was not served, he did in fact receive actual notice of service and the pending litigation. However,

---

[4]In addition to the requirement of strict compliance, there may be an additional reason for holding that service on the mayor's secretary was insufficient. Although the issue was not raised on appeal, it is fundamental that municipal corporations, being creatures of the state, derive their authority, powers, and duties from the legislature. *Campbell v. Saunders,* 86 Wn.2d 572, 546 P.2d 922 (1976); *Othello v. Harder,* 46 Wn.2d 747, 284 P.2d 1099 (1955). So, too, officers of a municipality, including the mayor, have only such powers and duties as are conferred upon them, expressly or by necessary implication, by applicable statutes. *State v. O'Connell,* 83 Wn.2d 797, 523 P.2d 872, 77 A.L.R.3d 874 (1974); *Othello v. Harder, supra.* The legislature has, by RCW 4.28.080(2), designated the mayor to receive service of process as agent for the City. No provision is made in the statute for the mayor to appoint another to accept service on his behalf for the City. Nor is any argument made supporting the contention that, by necessary implication, RCW 4.28.080(2) empowers the mayor to designate another to accept service. It would therefore seem that even if the mayor had authorized the substitute secretary to accept service, such attempted authorization would be ultra vires. One text writer has stated the rule as being that, in the absence of statutory authority, a mayor may not constitute any person he chooses to act for him in accepting service. 3 E. Yokley, *Municipal Corporations* § 517 (1958). However, the doctrine of equitable estoppel is an available remedy to prevent a manifest injustice. *See Seattle v. P.B. Inv. Co.,* 11 Wn. App. 653, 524 P.2d 419 (1974); *Finch v. Matthews,* 74 Wn.2d 161, 443 P.2d 833 (1968).

Meadowdale concedes that actual notice, standing alone, is insufficient to bring the City within the court's jurisdiction. *Thayer v. Edwards, supra.* In the absence of compliance with the statutory requirements of formal notice, no duty to intervene in a suit is imposed. *Veradale Valley Citizens' Planning Comm. v. Board of County Comm'rs,* 22 Wn. App. 229, 588 P.2d 750 (1978). Any hardship engendered by our interpretation of RCW 4.28.080(2) is properly a matter for the legislature and not for this court which must enforce the law as it reads it. *Fillyow v. County of Westchester, supra.*

■ A corollary issue to the question of sufficiency of service is Meadowdale's claim that the trial court erred in limiting discovery such that the secretary could not be deposed to determine whether an agency relationship existed, and, if so, whether the secretary was authorized as agent to accept service. The contention lacks merit. Meadowdale never sought to take the secretary's deposition. The trial court did not commit error by failing to rule on a question never presented to it. *Hamilton v. State Farm Mut. Auto. Ins. Co.,* 9 Wn. App. 180, 511 P.2d 1020 (1973).[5]

■ Even though service of process was insufficient, Meadowdale argues the City waived the defense by failing to join it with the motion to dismiss for failure to join a necessary party. Waiver is governed by CR 12(g) and (h).[6] Our reading of these provisions is that certain defenses,

---

[5]In its reply brief, Meadowdale takes a slightly different tack by pointing out that the deposition of the mayor himself regarding service of process was sought, but the court's protective order prohibited inquiry by deposition into the sufficiency of service. However, it remains that the heart of Meadowdale's claim is that an agency relationship, deducible from facts and circumstances, even if not existing by virtue of a specific authorization, may have existed as between the mayor and the secretary. It does not appear from the record that this theory was presented to the trial court. As an appellate court, we will not consider theories not presented to the trial court. *McCord v. Tielsch,* 14 Wn. App. 564, 544 P.2d 56 (1975).

[6]"(g) . . . A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a

enumerated in CR 12(b) and including insufficiency of service of process, may be raised in a preanswer motion or by answer. Further, if a CR 12(b) motion is made and insufficiency of service is omitted, it is waived and may not be raised in a subsequent motion or in the answer. *See* 2A J. Moore, *Federal Practice* ¶ 12.23 (2d ed. 1979). We agree with the determination made by the trial judge in this case that the City's argument urging dismissal of the action for failure to join a necessary party was in response to Meadowdale's order to show cause and was not raised by way of motion. The trial court stated in its memorandum decision of March 20, 1979, that "the City's first affirmative motion on the pleadings is the present motion to dismiss for lack of jurisdiction for failing to serve the Mayor of the City of Edmonds." There is nothing in the record upon which we can decide otherwise. The record contains no written motion, and Meadowdale concedes no motion was entered by the Superior Court clerk. Further, we have no record of what transpired at the show cause hearing. We therefore defer to the trial court's determination that no motion had been made. There having been no previous CR 12(b) motion, the trial court correctly concluded there was no issue of waiver under CR 12. Because insufficient service was raised in its answer, the City could properly raise it in a subsequent motion to dismiss. *Sorin v. Board of Educ.*, 464 F. Supp. 50 (N.D. Ohio 1978); 2A J. Moore, *Federal Practice* ¶ 12.05 (2d ed. 1979).

---

motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h) (2) hereof on any of the grounds there stated.

"(h) . . .

"(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." CR 12(g) and (h)(1).

■ At oral argument, counsel for Meadowdale suggested that jurisdiction may have been acquired over the City to review the legality of approval of the PRD by certiorari because that issue was somehow severable from the claims for money damages and attorney fees. Service of the summons was a jurisdictional prerequisite, counsel argued, only with regard to the noncertiorari claims. This argument, however, was not raised before the trial court nor addressed in Meadowdale's opening or reply briefs. It is thus not properly before us. In any event, where the plaintiff in a certiorari proceeding has elected to secure an order to show cause pursuant to RCW 7.16.050, and has chosen to serve it with a summons, it seems plain that the show cause order should be served, like the writ itself, "in the same manner as a summons." RCW 7.16.100(1). *Cf. Andrus v. County of Snohomish,* 8 Wn. App. 502, 507 P.2d 898 (1973). We therefore conclude that service of process was insufficient as to all the claims presented by Meadowdale's cause of action.[7]

The City argues in its cross appeal that the trial court erred in allowing the addition of Sierra West Construction Company as a party to relate back to the date of the original filing of the petition for certiorari. Because the City of Edmonds was not properly served, we need not discuss the relation–back issue except to note that in the absence of proper service within the applicable time limit, there is nothing to which the amendment naming Sierra West could relate back. Therefore, Sierra West was not served within the time allowed for appeal.

---

[7]It should also be noted that no contention is made that by appearing at the show cause hearing the City waived its right to challenge sufficiency of service. *See* CR 4(d)(5).

Given our disposition, we need not address the other issues raised. The judgment of the Superior Court dismissing the cause of action is affirmed.

JAMES, A.C.J., and RINGOLD, J., concur.