CAROLYN D. MILLER, Plaintiff-Appellee, v. THE TOWN OF CICERO *et al.*, Defendants (The Village of Stickney, Defendant-Appellant).

First District (5th Division)   No. 1—89—3475

Opinion filed January 24, 1992.

Altheimer & Gray, of Chicago (Donald J. Kreger, Kenneth C. Shepro, and Ruth Krugly, of counsel), for appellant.

Serpico, Novelle, Dvorak & Navigato, Ltd., of Chicago (Kevin J. O'Shea and William D. Serpico, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff Carolyn D. Miller filed a personal injury action against defendants, the Town of Cicero, the Village of Stickney and the County of Cook. The trial court entered a default judgment against the Village of Stickney. Stickney sought to quash service and vacate the default judgment. The trial court denied the motion, and Stickney appeals. The other defendants are not parties to this appeal.

On February 19, 1982, plaintiff filed a personal injury action after she collided with a concrete platform in the center of Pershing Road at the intersection where the towns of Cicero and Stickney meet. Count II sought damages against Stickney, alleging that Stickney had control of the portion of Pershing Road where the accident occurred. Attached to the complaint as exhibit 2 is a statutory notice of accident form to Arthur Rawers, clerk of the Village of Stickney. The space indicating receipt by the village clerk is blank.

The summons was issued on February 19, 1982. It included the following directions: "Sheriff, please serve: *** Village of Stickney, Village of Stickney Administration Building," and a street address in Stickney.

On February 26, 1982, a deputy sheriff, Jerry Geraci, left a copy of the summons with Lillian Rotrekl, an employee in the office of the Stickney village clerk. The return states that Geraci served the summons "[b]y leaving a copy with Lillian Rotrekl, agent of said defendant."

On May 11, 1982, the trial court granted Cook County's motion to quash service on the basis that service was made on the superintendent of highways, and not on the chairman of the county board or the county clerk as required by statute. On June 9, 1982, Cook County

was re-served at the clerk's office, and Cook County filed a general appearance in the action on July 9, 1982.

On August 18, 1982, the trial court entered a default judgment against Stickney. A notice of the motion for entry of the default judgment was mailed to "Village of Stickney" on July 30, 1982.

On April 11, 1984, Cook County filed a motion for summary judgment on the basis that it did not control Pershing Road and instead it was built and maintained by the Illinois Department of Transportation.

On June 15, 1984, Cicero filed a motion for summary judgment on the same basis. On the same day, Cicero was given leave to withdraw the motion for summary judgment without prejudice.

On June 15, 1984, the trial court entered an order granting the County of Cook's motion for summary judgment, dismissing the case against the County of Cook with prejudice.

On December 20, 1984, after prove up, the court entered a default judgment against Stickney in the amount of $25,000 plus costs.

On January 31, 1985, pursuant to stipulation, the court entered an order dismissing the Town of Cicero with prejudice and providing that the cause continue as to Stickney.

On February 2, 1987, plaintiff attempted to serve a citation to discover assets on Stickney. The returns on this citation, and several other citation forms, show that service was not made. The reasons are not specified.

On March 13, 1987, Mary Ellen Prerost, the deputy clerk of Stickney, accepted service by mail of plaintiff's citation to discover assets. Stickney did not appear at the March 23, 1987, hearing, and the matter was continued.

On April 6, 1987, Rotrekl accepted service from a deputy sheriff of another citation to discover assets. Stickney did not appear at the April 27, 1987, hearing, and the matter was again continued.

On June 12, 1987, Prerost accepted service by certified mail of another citation to discover assets. Stickney did not appear at the July 1, or July 10, 1987, hearing, and the matter was continued once again, in order for plaintiff to serve a properly elected official pursuant to Supreme Court Rule 277(c)(3) (134 Ill. 2d R. 277(c)(3)).

On July 13, 1987, the mayor of Stickney and the clerk of Stickney were served with a citation to discover assets.

On July 31, 1987, the court found that proof of service was "apparently" made on the mayor and the village clerk of Stickney. The court found that defendant Stickney had once again failed to appear, and it issued a rule to show cause why the mayor and village clerk

should not be held in contempt for failing to appear in court on the citation to discover assets.

On August 31, 1987, Stickney filed a special and limited appearance to object to personal jurisdiction, and a motion to quash service of summons and vacate the default judgment. Stickney attached the affidavit of Prerost, stating that in February 1982 Rotrekl was not authorized to accept service of summons on behalf of Stickney, and was not the president, village clerk or deputy clerk of Stickney.

On September 10, 1987, plaintiff moved to strike the affidavit of Prerost. The court denied the motion, but granted leave to depose Rotrekl and Prerost.

On March 31, 1989, the depositions of Rotrekl, Prerost, and Village Clerk Arthur Rawers were taken by plaintiff.

Rotrekl testified at her deposition that in February 1982 she held the position of "office clerk" for the village of Stickney. Prerost, the treasurer, deputy clerk and office manager, was Rotrekl's supervisor. Rotrekl's duties included answering telephones, "taking care of the [customer] window, the water department, licensing and miscellaneous duties."

Rotrekl did not recall whether she was at work on February 26, 1982, or whether she had accepted legal process. She testified, however, that she was not authorized as part of her duties of employment with the village to accept legal papers on behalf of the village. She did not know who was authorized to accept service. She "probably" accepted legal papers on behalf of the city at various times. If she had accepted any papers, they "would have been just laid on Mary Ellen['s] desk, not even looked at, just laid there because it was not my responsibility."

Prerost testified at a deposition that at the relevant time she held the positions of treasurer, collector and deputy clerk for the village of Stickney. As deputy clerk, her responsibilities were "[t]o assist the village clerk in any way I ha[d] to." Prerost did not recall the service of summons relating to the present case.

Prerost testified further that the village clerk was authorized to accept service of legal process, but "[i]n his absence, I would be." There was no document which authorized Prerost to accept service of summons. The authorization was "[j]ust an accepted fact." She continued: "Everybody that work[ed] in the office" knew it, including Rotrekl. Prerost never advised Rotrekl that they were not authorized to accept service of summons. There were no circumstances whatsoever under which Rotrekl was authorized to accept service.

Prerost also testified, however, that there were no circumstances under which she would have objected to office personnel accepting service of summons. During the eight years Rotrekl worked for the village, Rotrekl accepted service "many" times, and the village never objected to that practice.

Prerost testified that Rotrekl's duties included collecting money for water bills, issuing vehicle stickers and dog tags, dispersing mail in the office and general office work. Rotrekl was never the village clerk, deputy clerk or president.

Rawers testified at a deposition that at the relevant time he was clerk of the Village of Stickney. The position of village clerk was a part-time position. Rawers did not recall anything relating to the present action.

Rawers was not aware of the persons who were authorized to accept, or who would normally have accepted, service of process on behalf of the village in February 1982. He had neither authorized anyone to accept service, nor had he directed anyone *not* to accept service. In the 12 years which he had been village clerk, he had only personally accepted service one time, and that was only because he "just happened to be in the office at that time." Rawers stated: "Somebody receives [service]. I don't care who receives it."

In 1982, Rotrekl functioned basically as a secretary. She had never been a village clerk, deputy clerk or president.

An April 27, 1989, affidavit by Terry Geraci, attached to Stickney's motion to quash, states that "it was always my practice when serving a municipal corporation that I would inquire as to whether or not the person was authorized and able to accept the service of process on behalf of the particular municipality." In addition: "I would never leave service of summons with any person at a municipality unless they had indicated to me that they were authorized to accept said service on behalf of the municipal corporation."

On November 28, 1989, the court denied Stickney's motion to quash service and vacate default judgment.

Opinion

■ Stickney maintains that the trial court erred in finding it had personal jurisdiction and that service was properly made on Rotrekl. We agree. Section 2—211 of the Code of Civil Procedure provides:

> "Service on public, municipal, governmental and quasi-munic-ipal corporations. In actions against public, municipal, govern-mental or quasi-municipal corporations, summons may be served by leaving a copy with the chairperson of the county

board or county clerk in the case of a county, with the mayor or city clerk in the case of a city, *with the president of the board of trustees or village clerk in the case of a village,* with the supervisor or town clerk in the case of a town, and with the president or clerk or other officer corresponding thereto in the case of any other public, municipal, governmental or quasi-municipal corporation or body." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 110, par. 2—211.)

■ Personal jurisdiction does not exist unless proper service of summons has been made. (*Giralamo v. O'Connell* (1986), 145 Ill. App. 3d 527, 495 N.E.2d 1180.) Absent proper service of summons, unless there is a general appearance or a waiver of process, personal jurisdiction can be obtained only by compliance with the applicable statute specifying the precise manner of service of process. Without such compliance, the judgment is void even where defendant had actual knowledge of the proceedings. *State Bank v. Thill* (1986), 113 Ill. 2d 294, 497 N.E.2d 1156.

■ Here, the statute provides that with respect to a village, service must be made to the president of the board of trustees or the village clerk. (Ill. Rev. Stat. 1989, ch. 110, par. 2—211.) Plaintiff served Lillian Rotrekl, an office clerk with general clerical duties. The parties do not dispute that Rotrekl was not the president of the board of trustees or the village clerk of Stickney. Thus, the service was obviously not in compliance with the plain language of the statute.

The general principle governing the effect of service upon employees or agents of a public body other than those expressly designated by statute to receive summons on behalf of that public body has been enunciated in the early Supreme Court decision of *Amy v. City of Watertown* (1889), 130 U.S. 301, 32 L. Ed. 946, 9 S. Ct. 530. There, the Court held that no *in personam* jurisdiction attached where the statute required service on the mayor and, because the office of mayor was temporarily vacant, service was instead made on the ex-mayor, the city clerk, the city attorney and the last presiding officer of the board of street commissioners. The Court stated:

" 'The principle is too elementary to need discussion that a court can only acquire jurisdiction of a party, where there is no appearance, by the service of process in the manner prescribed by law.' *** 'When the statute prescribes a particular mode of service, that mode must be followed. *** When the statute designates a particular officer to whom the process may be delivered and with whom it may be left, as service upon the [municipal] corporation, no other officer or person can be substituted

in his place. The designation of one particular officer upon whom service may be made excludes all others.' " *Watertown*, 130 U.S. at 317, 32 L. Ed. at 952, 9 S. Ct. at 536.

This rule, which does not permit alternate service on agents of a public body other than those listed in the statute, has been stringently followed. Substitute service on a municipal entity is not a permissible method of service. See *Johnson v. City of Raleigh* (1990), 98 N.C. App. 147, 389 S.E.2d 849 (city is not a natural person for purposes of substituted personal process); *Vergo v. City of Mulberry* (1949), 167 Kan. 561, 562, 207 P.2d 370, 371 (a city is not a company or private corporation; where statute provides a particular municipal officer for acceptance of service, the statute must be followed); *In re Heinisch* (1986), 121 A.D.2d 721, 723, 503 N.Y.S.2d 901, 902 (municipality is not a private corporation for purposes of service of summons analysis; service on woman working at counter in town hall was ineffective where statute requires service on chairman, secretary, clerk or member of town board of appeals).

See also *Amen v. City of Dearborn* (6th Cir. 1976), 532 F.2d 554, 557 (service on secretary of city clerk and on elections director was ineffective where statute required service on mayor, city clerk or city attorney; however, service effective where statute permits service on person in charge of office of those listed in statute); *Rankel v. Green-burgh* (S.D.N.Y. 1987), 117 F.R.D. 50 (service on town attorney was ineffective where statute requires service on town supervisor or town clerk; however, action not dismissed because plaintiff is *pro se* and town filed answer without objection to service); *Tucker v. Eaton* (1986), 426 Mich. 179, 393 N.W.2d 827 (service on administrative secretary for city hospital was ineffective where statute requires service on mayor, city clerk or city attorney); *Nitardy v. Snohomish County* (1986), 105 Wash. 2d 133, 712 P.2d 296 (service on secretary to county executive was not effective where statute requires service on county auditor); *Town of Washington v. Village of Cecil* (1972), 53 Wis. 2d 710, 193 N.W.2d 674 (service on clerk's wife at home was ineffective where statute requires service on village president or clerk); *Walters v. Dock Comm'n* (1928), 126 Or. 478, 270 P. 778 (service on secretary of dock commission ineffective where statute requires service on city clerk); *Landreville v. Shoreline Community College District* (1988), 53 Wash. App. 330, 766 P.2d 1107 (service on administrative assistant in the office of the attorney general was ineffective where statute requires service on attorney general or assistant attorney general); *City of Mesquite v. Bellingar* (Tex. Ct. App. 1985), 701 S.W.2d 335 (service on city attorney ineffective where statute requires

service on city's mayor, clerk, secretary or treasurer); *Meadowdale Neighborhood Committee v. City of Edmonds* (1980), 27 Wash. App. 261, 616 P.2d 1257 (service on mayor's secretary and on city clerk was ineffective where statute requires service on mayor).

See generally 56 Am. Jur. 2d *Municipal Corporations* §854, at 836 (1971) ("when the statute designates a particular municipal officer upon whom process may be served, no other officer or person may be substituted"); 64 C.J.S. *Municipal Corporations* §2205(c)(3), at 1053 (1950) ("[j]urisdiction is not acquired by service on one other than the officer or agent named in the statute"). Accord 17 E. McQuillin, Municipal Corporations §49.32, at 215 n.10 (3d ed. 1982).

While there is a dearth of dispositive cases in Illinois pertaining to the availability of substituted service upon a governmental body, *Town of Hutton v. Ingram* (1929), 255 Ill. App. 97, comes close. There, the defendant in error failed to serve the town supervisor or town clerk as required by statute. Notwithstanding this absence of personal service upon the statutorily designated agent of the town, the trial court found that it nevertheless had jurisdiction over defendant in error, and entered judgment against it for $750. The appellate court reversed, relying on the fact that the applicable statute required that process be served on the supervisor or town clerk. After determining that no personal service was effected, the court went on to state that the lack of service was not cured or made moot by the stipulation of its attorney to a consent judgment, stating:

> "The record does not disclose any authority from the town of Hutton to Charles Wallace, who appeared for the town to defend the case as attorney, to compromise or settle the alleged claim or to consent to an allowance of a judgment for the sum of $750 against the town of Hutton." (*Hutton*, 255 Ill. App. at 99.)

The facts reflected in the opinion are obscure as to the identity of the alternate person actually served on behalf of the town. But the decision was clear that it did "not appear from the return that either the supervisor or the town clerk of the town of Hutton were [*sic*] served as required by the statute" (*Hutton*, 255 Ill. App. at 99), and therefore no *in personam* jurisdiction was obtained. The holding in *Hutton* is therefore consistent with the basic principle set forth in *Amy v. Watertown* and followed by the majority of other jurisdictions, which does not permit service upon alternate public employees or agents in place of those designated by statute. See 17 E. McQuillin, Municipal Corporations §49.32, at 215 n.10 (citing *Hutton v. Ingram*, 255 Ill. App. 97, for the principle that "[w]here the law designates the officer

who shall be served, usually service upon some other officer will be insufficient").

Plaintiff attempts to distinguish the holding in *Hutton* by pointing to the partial quote in that case that the "record does not disclose any authority from the Town of Hutton to" Wallace. As indicated in the full quote recited above, however, the court in *Hutton* was discussing authority to settle, not authority to accept summons. As previously indicated, the opinion does not even identify Wallace as the person who was served.

It is true that our holding, which requires the trial court to vacate the default judgment and quash service of summons, may seem "an unnecessary hardship, stressing technicalities rather than the realities of the situation, since there is no claim that the county authorities did not receive the summons from the employee." However, we must conclude, as did the court in *Fillyow v. County of Westchester*, that "[this] is a matter of concern for the legislature, and not for the court, which must enforce the law as it reads." *Fillyow v. County of Westchester* (1961), 33 Misc. 2d 501, ____, 225 N.Y.S.2d 848, 850; see also *Meadowdale Neighborhood Committee*, 27 Wash. App. at 268, 616 P.2d at 1262 (any hardship caused by quashing service of summons on municipality is a matter for the legislature).

Plaintiff maintains that "the act of Rotrekl on numerous occasions, accepting service, the clerks' knowledge of her acceptance, and their tacit approval of Rotrekl accepting service, authorized the validity of service of summons upon Rotrekl. The Village of Stickney is estopped from denying, at this point, that Rotrekl was authorized to accept service of summons."

In general, estoppel against public bodies is not favored and is found only in rare circumstances. (*County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 405 N.E.2d 1376.) A governmental body cannot be estopped by an act of its agent which exceeds the authority conferred on that agent. (*County of Cook v. Patka*, 85 Ill. App. 3d 5, 405 N.E.2d 1376.) "Anyone dealing with a governmental body takes the risk of accurately ascertaining that he who purports to act for that body stays within the bounds of his authority, and this is so even though the agent himself may have been unaware of the limitations on his authority." *County of Cook v. Patka*, 85 Ill. App. 3d at 12.

Furthermore, we find that there is insufficient basis to support the invocation of the doctrine of equitable estoppel here. There is no evidence that Stickney took action intended to cause plaintiff to rely on any presumption that there had been proper service. (See *Henderson v. City of New York* (1988), 143 A.D.2d 884, 533 N.Y.S.2d 547;

*Tucker v. Eaton* (1986), 426 Mich. 179, 393 N.W.2d 827; *Landreville v. Shoreline Community College District* (1988), 53 Wash. App. 330, 766 P.2d 1107.) There has been no showing that plaintiff was misled by any representation or concealment of fact by Stickney, and no showing that a proper official of Stickney had notice of the action within the limitation period and made a conscious decision to delay raising the defect in service until after the limitation period had run. See *Tucker v. Eaton*, 426 Mich. at 184-85, 393 N.W.2d at 830-32 (rejecting appellate court's holding that an exception exists if the municipal defendant had established a systematic alternative method of accepting service). See also *French v. Gabriel* (1991), 116 Wash. 2d 584, 806 P.2d 1234 (defendant not estopped from raising defense of insufficient service of process where plaintiff failed to show any act or statement by defendant that was inconsistent with the defense and that plaintiff relied on to his detriment).

Plaintiff also relies on the affidavit of Deputy Sheriff Geraci, which states that as a matter of general practice, when serving a municipality, he would have asked for the person "authorized" to accept service. Geraci, however, had no specific recollection of the service he made in this case, while Rotrekl testified that in fact she had no such authority.

Moreover, in view of the clear language of the statute, any reliance upon Rotrekl's statement that she had authority to accept service would have been unreasonable. See *Landreville v. Shoreline Community College District*, 53 Wash. App. 330, 766 P.2d 1107 (court rejects argument that the State should be estopped from contesting service of process because the administrative assistant in the Attorney General's office who accepted service represented that she had the authority to accept service; reliance upon her statements would be unreasonable where the statute clearly requires service upon the Attorney General or an assistant Attorney General).

We note that plaintiff made no attempt to ascertain the proper person for service and include appropriate directions for the sheriff on the summons. The summons simply gave the name "Village of Stickney" with a street address. We also note that plaintiff made the identical mistake in serving another defendant in this action. Cook County successfully moved to quash service where plaintiff served the superintendent of highways instead of the proper person authorized by statute. *Cf. Justice v. Lyng* (D. Ariz. 1988), 716 F. Supp. 1567, 1570 (plaintiff permitted to re-serve defendant United States attorney where failure to properly serve was not a result of counsel's inadvertence or half-hearted attempts to serve).

We conclude that the trial court erred in denying Stickney's motion to quash service of summons and vacate default judgment.

Stickney urges us to go on to find that the underlying action is "utterly meritless" because the summary judgment proceedings involving defendant Cook County show that the location of the accident "is not and never has been within the corporate boundaries of the Village of Stickney." In light of our holding that no personal jurisdiction existed, we need not consider the merits of plaintiff's underlying action.

Accordingly, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings consistent with the holdings contained herein.

Reversed and remanded.

MURRAY and LORENZ, JJ., concur.