# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WILLIAM LOVE, as Personal Representative of the ESTATE OF CAMILLE LOVE, and JOSHUA LOVE, a single man, | No. 46798-4-II |
| Appellants, | |
| v. | |
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS, a governmental entity, CITY OF TACOMA, a municipal corporation and DOES 1-10 INCLUSIVE, | UNPUBLISHED OPINION |
| Respondents. | |

MAXA, J. – William Love and Joshua Love (collectively Love) appeal the trial court's summary judgment dismissal of their lawsuit against the State Department of Corrections (State) based on insufficient service of process and the expiration of the statute of limitations. Love delivered the summons and complaint to the Tacoma attorney general's office and it was stamped as received. However, the State asserted that service was insufficient because Love did not actually serve the summons and complaint on an assistant attorney general (AAG) as required under RCW 4.92.020.

Love initially argued that he had served a secretary at the attorney general's office, and the trial court granted summary judgment in favor of the State because no AAG had been served. Love filed a motion for reconsideration, and the trial court held an evidentiary hearing on the service issue. Love offered testimony that the receptionist at the attorney general's office had

presented a person who appeared to be an AAG to accept service, but the trial court found that the testimony was not credible. The trial court concluded that the State had presented clear and convincing evidence that service was insufficient and therefore denied reconsideration.

We hold that summary judgment was appropriate because (1) substantial evidence presented at the evidentiary hearing supported the trial court's conclusion that the State presented clear and convincing evidence of insufficient service; (2) the State was not estopped from asserting insufficient service because the trial court did not believe Love's evidence that the receptionist at the attorney general's office purported to present the proper person for service, and (3) the State did not waive its affirmative defense by waiting a year before moving for summary judgment on insufficient service.[1]

Accordingly, we affirm the trial court's grant of summary judgment in favor of the State.

FACTS

According to Love's complaint, on February 7, 2010 gang members who were under the supervision of the State shot and killed Camille Love and shot and injured Joshua Love. On February 7, 2013, William Love (as personal representative of Camille's estate) and Joshua Love filed a lawsuit against the State and the city of Tacoma[2] for various causes of action including negligence and wrongful death.

---

[1] On appeal, Love also argues that (1) an AAG was properly served by secondhand service, (2) the doctrine of constructive service applies, (3) the State waived the statute of limitations affirmative defense by failing to affirmatively plead it, and (4) the statute of limitations did not run because it was tolled when Love served the city of Tacoma, another defendant. However, Love did not make these arguments in the trial court. Therefore, we decline to consider them for the first time on appeal. RAP 2.5(a); *Martin v. Johnson*, 141 Wn. App. 611, 623, 170 P.3d 1198 (2007).

[2] The trial court dismissed Love's claims against Tacoma on March 29, 2013.

No. 46798-4-II

*Service of Complaint*

On March 5, Stephen Currie delivered a copy of the summons and complaint to the Tacoma attorney general's office. In a declaration of service prepared on March 6, Currie stated that he served a "receptionist, a tall Caucasian male." Clerk's Papers (CP) at 184. In a later declaration signed on May 6, 2014, Currie stated:

> I approached the receptionist desk and asked who accepted service in their office. The receptionist left and returned with a tall Caucasian male who agreed to accept service on behalf of the Attorney General's office. The male who agreed to accept service was dressed in a suit and tie and he was wearing a badge, therefore I assumed he was the appropriate person to accept service.

CP at 118.

In April 2013, the State filed its answer to Love's complaint, in which it asserted insufficient service in its list of affirmative defenses.

*Extent of Litigation*

During oral argument on summary judgment, Love represented to the court that the parties had engaged in litigation, stating:

> We've had a couple of motions that have been heard by the Court, the motion to continue the trial date, as well as the motion to depose the defendants in the Department of Corrections. . . . We've had numerous requests for interrogatories and requests for production, and we've also engaged in depositions.

Report of Proceedings (RP) at 13. The State noted that it did not bring any motions prior to its motion for summary judgment. However, nothing in the appellate record provides information about what discovery or other litigation activities had occurred before the State filed its summary judgment motion.

3

*Summary Judgment Motion*

In April 2014, a year after it filed an answer, the State filed a summary judgment motion seeking dismissal of Love's lawsuit based on insufficient service and expiration of the statute of limitations. The State argued that Love did not serve the summons and complaint on an AAG as required under RCW 4.92.020.

Love's response in opposition to summary judgment argued that service was proper under RCW 4.28.080(9), which allows service on a company or corporation by delivering the summons to a secretary. Love argued, "In this action the summons and complaint were served upon the secretary at the attorney general's office." CP at 113. Love also argued that the State had waived its insufficient service affirmative defense by engaging in discovery on the merits.

The trial court granted summary judgment in favor of the State and dismissed Love's claims with prejudice.

*Motion for Reconsideration/Evidentiary Hearing*

Love filed a motion for reconsideration, arguing for the first time that an AAG was properly served as required by RCW 4.92.020. Love requested an evidentiary hearing to determine whether Currie had served an AAG. The trial court granted Love's request.

At the evidentiary hearing, Currie testified that his initial declaration of service from March 6, 2013 that said he served a male receptionist was incorrect. Currie testified that what really happened was that he told a female receptionist he had a summons and complaint to serve on "the appropriate party who will accept service on behalf of the Attorney General's Office." RP at 109. The receptionist left and brought an AAG from the back to accept service.

Currie described the AAG as a tall Caucasian male in a suit and tie. He said the AAG came from behind the glass window into the lobby area. And Currie claimed that he observed the AAG personally stamp the summons and complaint. Currie did not ask the AAG to identify himself. But based on photos provided by the attorney general's office, Currie identified the AAG he served as Glen Anderson.

Anderson testified that he was not wearing a suit and tie on March 5 because there was a quarterly meeting that day and he would not have worn a suit to the meeting, but would have worn slacks or khakis and a dress shirt. In response to Currie's statement in his second declaration that the person he served was wearing a badge, Anderson also testified that he never wears a badge or ID around his neck. The State submitted a staff photograph taken on March 5 that pictured Anderson wearing a light blue collared shirt without a jacket or tie and without a badge. Anderson also explained his procedure for accepting service and noted that he receives the paperwork and fills out the acknowledgment stamp at the counter behind a glass partition in the reception area.

Martin Heyting, a receptionist at the Tacoma attorney general's office, also testified at the evidentiary hearing. Heyting explained that there was an office protocol for accepting service. He said that he would ask a person to clarify if he was dropping off papers or serving the office. If someone came to the front desk to serve the attorney general's office, then Heyting would summon an AAG.

According to Heyting, if an AAG accepted service the summons and complaint would be stamped with a special "acknowledgment of receipt" stamp that had a spot for the AAG to sign to show who accepted service. RP at 86. In addition, the receptionist maintained a log to note

information about the case and which AAG accepted service. Heyting testified that the log page from March 5 indicated that the Love summons and complaint was received but not served. The log entry was in Heyting's handwriting.

The Love summons and complaint was stamped as received by the Tacoma attorney general's office and dated March 5, 2013, but it did not bear the "acknowledgment of receipt" stamp or an AAG signature.

After the evidentiary hearing, the trial court denied Love's motion for reconsideration. The trial court also entered written findings of fact and conclusions of law with regard to the evidentiary hearing. After reciting the evidence presented at the hearing, the trial court made the following finding of fact: "In light of all the evidence in the record, the Court finds that service was never completed by properly serving an AAG." CP at 230.

The trial court's conclusions of law included:

1. The plaintiffs failed to establish a prima facie case establishing they properly served the State.
2. The totality of the record establishes by clear cogent and convincing evidence the plaintiffs did not perfect service against the State by serving an AAG at any time.
. . . .
4. The plaintiffs did not serve Mr. Anderson or any other AAG the summons and complaint.

CP at 230. The trial court also entered conclusions of law that the State was not estopped from raising the insufficiency of service defense and had not waived the defense. CP at 230.

Love appeals the trial court's grant of summary judgment in favor of the State.

ANALYSIS

A.     STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We review the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Keck*, 184 Wn.2d at 370.

Although it may require factual considerations, the sufficiency of service of process is a question of law reserved to the trial court. *Harvey v. Obermeit*, 163 Wn. App. 311, 327, 261 P.3d 671 (2011). We review de novo whether service of process was sufficient. *Scanlan v. Townsend*, 181 Wn.2d 838, 847, 336 P.3d 1155 (2014).

However, an evidentiary hearing may be required when affidavits regarding service present an issue of fact. *Harvey*, 163 Wn. App. at 327. We review a trial court's findings of fact and conclusions of law after such an evidentiary hearing to determine whether substantial evidence supports the findings of fact and whether the findings support the conclusions of law. *Id.* at 318.

B.     SERVICE OF PROCESS UNDER RCW 4.92.020

Proper service of the summons and complaint is required to invoke personal jurisdiction. *Scanlan*, 181 Wn.2d at 847. Actual notice is not a substitute for proper service. *Ralph's Concrete Pumping, Inc. v. Concord Concrete Pumps, Inc.*, 154 Wn. App. 581, 585, 225 P.3d 1035 (2010). When a defendant challenges service of process, the plaintiff has the initial burden

of proof to establish a prima facie case of proper service. *Scanlan*, 181 Wn.2d at 847. The defendant then must show by clear and convincing evidence that service was improper. *Id.*

Chapter 4.92 RCW governs the process for bringing actions and claims against the State. RCW 4.92.020 is the applicable service statute: "Service of summons and complaint in such actions shall be served in the manner prescribed by law upon the attorney general, or by leaving the summons and complaint in the office of the attorney general *with an assistant attorney general*." (Emphasis added.)

When the legislature names a specific person to receive service, serving anyone other than the named person amounts to insufficient service. *See Nitardy v. Snohomish County*, 105 Wn.2d 133, 134-35, 712 P.2d 296 (1986) (holding that service on the secretary to the county executive is insufficient when the service statute specifically named the county auditor as the person to receive service in actions against the county); *Davidheiser v. Pierce County*, 92 Wn. App. 146, 150-56, 960 P.2d 998 (1998) (holding that even when the risk management office represented that it could accept service, service on that office was insufficient when the service statute required service on the county auditor or deputy auditor); *Meadowdale Neigh. Comm. v. City of Edmonds*, 27 Wn. App. 261, 262, 267, 616 P.2d 1257 (1980) (holding that service on the secretary to the mayor was insufficient when the service statute required service on the mayor).

Accordingly, "[b]ecause RCW 4.92.020 specifies that service can only be made upon the Attorney General or left with an Assistant Attorney General, leaving the summons and complaint with the administrative assistant [is] not sufficient" to constitute proper service. *Landreville v. Shoreline Cmty. Coll.*, 53 Wn. App. 330, 332, 766 P.2d 1107 (1988). And in light of the clear

language in RCW 4.92.020, it is unreasonable to rely on representations that service may be accepted by anyone other than the Attorney General or an AAG. *Id.*

C.     SUFFICIENCY OF SERVICE ON AAG

Love argues that the trial court erred in granting summary judgment in favor of the State because Love met his burden to show proper service and the State failed to show by clear and convincing evidence that service was insufficient. We disagree.

1.     Prima Facie Case of Proper Service

To make a prima facie case of proper service, the plaintiff may produce an affidavit of service that on its face shows that service was properly carried out. *Witt v. Port of Olympia*, 126 Wn. App. 752, 757, 109 P.3d 489 (2005). Or the plaintiff can establish proof of service by the written acceptance or admission of the defendant, his agent, or his attorney. *Scanlan*, 181 Wn.2d at 848.

But when a statute requires that a particular person be served, the affidavit of service must be sufficient to show that the specified person was served. *Witt*, 126 Wn. App. at 757-58. In *Witt*, the plaintiff was required to follow the direction of RCW 4.28.080(9) and deliver a copy of the summons and complaint to the "president or other head of the company or corporation, the registered agent, secretary, cashier or managing agent thereof or to the secretary, stenographer or office assistant" of those persons. *Witt*, 126 Wn. App. at 757 (quoting RCW 4.28.080(9)). The process server's affidavit of service merely stated that summons and complaint were signed by " 'the clerk at the Port Office.' " *Id.* at 758. The "clerk" was in fact a 17-year-old student intern. *Id.* at 755.

9

This court held that the plaintiff in *Witt* failed to make a prima facie case because she only showed evidence of service on a "clerk," rather than any of the named positions listed in RCW 4.28.080(9). *Id.* at 758. Further, even if the "clerk" was understood to be the equivalent of an "office assistant," the plaintiff gave no proof that the person served was the assistant to one of the persons named in the service statute. *Id.*

Here, in his initial opposition to summary judgment Love similarly failed to make a prima facie case. Love presented two declarations from Currie and the stamped summons and complaint to show proper service. However, taken together and even viewed in the light most favorable to Love, there was no evidence that Currie served an AAG as required. Currie's March 6, 2013 declaration of service stated he served "the receptionist, a tall Caucasian male." CP at 184. And his May 6, 2014 declaration stated he served "a tall Caucasian male who agreed to accept service on behalf of the Attorney General's office." CP at 118. Neither declaration shows that Currie served an AAG and Love initially did not even argue that he served an AAG. Accordingly, the trial court did not err in initially granting summary judgment in favor of the State.

On reconsideration, the trial court held an evidentiary hearing on whether Love had properly served an AAG. Currie testified that the declarations were incorrect and that he did in fact serve an AAG. He also identified Anderson as the person he served.

This testimony presented a prima facie case of proper service. A process server's sworn testimony that he served an AAG generally should be enough to establish a prima facie case,

10

even if that testimony is contradicted by other testimony and evidence.[3]  Whether service *actually* occurred relates to the defendant's burden to show by clear and convincing evidence that service was improper.  *Scanlan*, 181 Wn.2d at 847.

### 2.   Clear and Convincing Evidence Showing Insufficient Service

Even though Love established a prima facie case showing proper service, the State presented clear and convincing evidence showing that service was insufficient.  At the evidentiary hearing, the State presented strong evidence that Currie did not serve an AAG.  Heyting and Anderson explained in detail the attorney general's office's service procedures and stated that an AAG would have signed the summons and complaint if actually served.  No AAG signed Love's summons and complaint.  And Anderson testified that he was not dressed in the way Currie described and was not wearing a badge as Currie claimed on the date of service.

The trial court made an express finding of fact that service was not completed on an AAG, and Love does not argue that substantial evidence did not support this finding.  Further, the trial court made an express conclusion of law that "[t]he totality of the record establishes by clear cogent and convincing evidence the plaintiffs did not perfect service against the State by serving an AAG at any time."  CP at 230.  Love does not argue that the findings of fact do not support this conclusion of law.  And the testimony of Heyting and Anderson at the evidentiary hearing strongly supported both the factual finding and the conclusion of law.

---

[3] The trial court made an express conclusion of law that Love failed to present a prima facie case that he properly served the State.  However, the record does not support this conclusion.

We hold that the trial court did not err in concluding that the State presented clear and convincing evidence that Love did not serve the summons and complaint on an AAG. Accordingly, we hold that service of process was insufficient under RCW 4.92.020.

D.    INSUFFICIENT SERVICE DEFENSE – EQUITABLE ESTOPPEL

Love argues that the State should be equitably estopped from asserting an insufficient service defense because Currie testified that he told the receptionist that he needed to serve an appropriate party and the receptionist presented a person who appeared to be an AAG.[4] We disagree.

Equitable estoppel requires (1) an admission, statement or act inconsistent with a claim afterwards asserted, (2) action by another in reasonable reliance upon that act, statement, or admission, and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission. *Lybbert v. Grant County,* 141 Wn.2d 29, 35, 1 P.3d 1124 (2000). The party asserting estoppel must show each element by clear, cogent and convincing evidence. *Id.*

Here, Currie testified that he told a female receptionist that he had a summons and complaint to serve on "the appropriate party who will accept service on behalf of the Attorney General's Office." RP at 109. According to Currie, the receptionist left and brought a person from the back to accept service. Love essentially claims that through this action the receptionist represented that the person presented to accept service was an AAG.

---

[4] The record does not reflect that Love argued estoppel in the trial court. However, the trial court entered an express conclusion of law that the State was not estopped from raising insufficiency of service. Therefore, we address this issue.

12

We need not decide whether estoppel would apply in the situation described in Currie's testimony – a receptionist producing a person represented to be appropriate to accept service – because the trial court found that Currie's testimony was not credible.[5] In other words, the trial court found after weighing the evidence that Currie's claimed interaction with the receptionist and service on the person the receptionist produced did not occur.

After the evidentiary hearing, the trial court summarized the evidence that was inconsistent with Currie's testimony, including (1) Currie's original declaration where he stated that he served the receptionist rather than an AAG, (2) the attorney general's office log showing that the summons and complaint were delivered but not served on an AAG, (3) the absence in Currie's second declaration of the details he provided at the hearing, and (4) Love's initial argument in opposition to summary judgment that service on a receptionist or secretary was good service. The trial court concluded, "[N]o, I have not found the evidence that I heard today was credible" and stated that Currie's current testimony "makes no sense" in the context of the other evidence. RP at 180.

We defer to the trial court's credibility determinations and weighing of the evidence after an evidentiary hearing. *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 778, 275 P.3d 339 (2012). Because the trial court found that Currie's testimony was not credible, Love cannot show by clear, cogent and convincing evidence that he relied on an act that was inconsistent with the State's assertion of an insufficient service defense. Accordingly, we hold that the State is not

---

[5] *Lybbert,* 141 Wn.2d at 35-37, and *Landreville*, 53 Wn. App. at 331-32, suggest that when a special service statute clearly names a specific target of service, a plaintiff may have difficulty establishing the reasonable reliance requirement for estoppel.

equitably estopped from asserting an insufficient service defense and that the trial court did not err in granting summary judgment in favor of the State on this issue.

E.     WAIVER OF INSUFFICIENT SERVICE DEFENSE

Love argues that the State waived its insufficient service defense because it engaged in discovery on other issues and filed its summary judgment motion a year after filing its answer. We disagree.

1.     Legal Principles

In certain circumstances, a defendant may waive as a matter of law an affirmative defense, including insufficient service of process. *Lybbert,* 141 Wn.2d at 38-39. The doctrine of waiver is designed to foster and promote the just, speedy and inexpensive resolution of actions by preventing litigants from acting in an inconsistent fashion and employing delaying tactics. *Id.* at 39. It also is designed to "prevent a defendant from ambushing a plaintiff during litigation either through delay in asserting a defense or misdirecting the plaintiff away from a defense for tactical advantage." *King v. Snohomish County*, 146 Wn.2d 420, 424, 47 P.3d 536 (2002).

Waiver of an affirmative defense can occur in two ways: (1) if the defendant is dilatory in asserting the defense or (2) if assertion of the defense is inconsistent with the defendant's previous behavior. *Lybbert,* 141 Wn.2d at 39. Regarding the first type of waiver, a defendant is not dilatory in asserting the defense if it is first asserted in a timely filed answer. *King*, 146 Wn.2d at 424.

Regarding the second type of waiver, cases addressing inconsistent behavior fall into two categories: inconsistent behavior before filing an answer and inconsistent behavior after filing an answer. In *Lybbert*, the parties exchanged interrogatories regarding substantive issues and

engaged in other litigation activities for nine months *before* the defendant asserted an insufficient process defense in its answer. 141 Wn.2d at 32-33. In addition, the defendant did not answer interrogatories designed to ascertain whether the defendant was asserting an insufficient process defense. *Id.* at 42. Finally, the defendant waited until after the statute of limitations had run before asserting the defense. *Id.*

The Supreme Court held that the defendant's conduct was inconsistent with its assertion of an insufficient process defense and therefore that waiver applied. *Id.* at 44-45. The court stated that it was unacceptable for a defendant to "lie in wait, engage in discovery unrelated to the defense, and thereafter assert the defense after the clock has run on the plaintiff's cause of action." *Id.* at 45.

Similarly, in *Butler v. Joy*, the defendant filed a summary judgment motion (not on the basis of insufficient service) and engaged in depositions (unrelated to service) before filing an answer asserting an insufficient service defense. 116 Wn. App. 291, 294, 65 P.3d 671 (2003). The defendant's answer came six months after receiving the complaint and three months after the statute of limitations had run. *Id.* The court held that the defendant waived the insufficient service defense by engaging in inconsistent actions before asserting the defense. *Id.* at 298; *see also Blakenship v. Kaldor*, 114 Wn. App. 312, 315, 319-20, 57 P.3d 295 (2002) (finding waiver when the defendant propounded interrogatories and deposed the plaintiff before filing an answer over a year after suit was filed asserting an insufficient service defense).

On the other hand, in *French v. Gabriel* the Supreme Court held that the defendant did not waive the insufficient service defense by taking a deposition addressing other litigation matters *after* stating the defense in his answer. 116 Wn.2d 584, 594, 806 P.2d 1234 (1991).

The court stated that "once [the defendant] properly preserved his defense by pleading it in his answer, he is not precluded from asserting it by proceeding with discovery." *Id.*

In *King*, the Supreme Court noted that timely filing an answer raising an affirmative defense does not preserve the defense in perpetuity. 146 Wn.2d at 426. In that case, the court held that the defendant waived the insufficient claim filing defense through inconsistent actions taken *after* filing his answer by litigating the case on other grounds for four years, including extensive discovery, 18 depositions, a summary judgment motion (not on the basis of improper claim filing), four continuances at the defendant's request, and mediation, and only seeking dismissal on the basis of insufficient claim filing three days before trial. *Id.* at 423, 425.

2.    Inapplicability of Waiver

Here, the State did not waive its defense through dilatory conduct because it asserted an insufficient service defense in its answer, which was filed a month after receiving the complaint. And Love does not argue that the State engaged in inconsistent behavior before filing the answer. Therefore, *Lybbert*, *Butler*, and *Blakenship* are inapplicable. The question is whether the State engaged in any inconsistent conduct after filing its answer that would support a finding of waiver.

Several factors are significant here. First, the State did not "lie in wait . . . and thereafter assert the defense after the clock has run on the plaintiff's cause of action." *Lybbert*, 141 Wn.2d at 45. The State asserted the insufficient process defense in its answer on April 9, 2013. The statute of limitations did not expire until May 8, which gave Love 29 days to properly serve the State.

16

Second, there is no evidence that the State engaged in any conduct that would have prevented Love from discovering the basis for the insufficient process defense asserted in its answer. Love does not contend that the State avoided answering interrogatories directed at the defense.

Third, Love claims that the parties engaged in discovery and other litigation activities for a year before the State filed its summary judgment motion, but the record does not indicate what took place during that year. There certainly is no claim that the State engaged in the type of extensive discovery that occurred in *King*. The court in *French* held that merely taking a deposition and engaging in other litigation activities did not give rise to a waiver when the defendants asserted an insufficient service defense in a timely answer. 116 Wn.2d at 594.

Fourth, the State gained no advantage from delaying the filing of its summary judgment motion for a year. The statute of limitations expired on May 8, 2013. Therefore, the result would have been the same if the State had filed its motion on May 9, 2013 instead of in April 2014.

Fifth, Love has cited no authority for the proposition that mere delay for a year in filing a summary judgment motion – in the absence of any other factors – is sufficient to waive an insufficient process defense when the defense is included in a timely filed answer. In *French*, the Supreme Court found no waiver when the defendant waited over a year after asserting insufficiency of service before moving to dismiss the case, even when the parties engaged in some litigation activities. 116 Wn.2d at 587-88, 594.

17

Given these factors, we hold that the State did not waive its insufficient service defense. Accordingly, we hold that the trial court did not err in granting summary judgment in favor of the State on this issue.

F.      EVIDENTIARY HEARING FINDINGS OF FACT

Love assigns error to a number of findings of fact resulting from the evidentiary hearing, but fails to argue that the findings are not supported by substantial evidence or that they do not support the trial court's conclusions of law.

We generally consider an assignment of error waived when a party fails to provide an argument explaining the basis of the error. *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986). Because Love never discusses the assignments of error regarding the trial court's findings of fact, we decline to address them.

We affirm the trial court's grant of summary judgment in favor of the State.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
BJORGEN, C.J.

_____
SUTTON, J.